**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JOYCE WEHRLE, YVETTE GRIFFIN, and ALICE KLEINSCHMIDT, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>McLAREN HEALTH CARE CORPORATION, and BARBARA ANN KARMANOS CANCER INSTITUTE,<br><br>Defendants. | Case No. 25-cv-11420<br><br>Hon. Matthew F. Leitman |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants McLaren Health Care Corporation and Barbara Ann Karmanos Cancer Institute (together "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss Plaintiffs' First Amended Class Action Complaint (the "Complaint"). (ECF No. 113.) The grounds for this Motion are set forth in the attached Memorandum of Law.

Pursuant to L. Civ. R. 7.1(d)(i), counsel for Defendants conferred with counsel for Plaintiffs via telephone on October 21, 2025, but did not obtain concurrence for the relief sought in this Motion.

WHEREFORE, Defendants respectfully request that the Court grant this Motion, dismiss the Complaint, and award Defendants such other and further relief as is appropriate.

Respectfully Submitted,

Dated: October 22, 2025

MCDONALD HOPKINS LLC

By: */s/ Christopher G. Dean*

Christopher G. Dean
McDonald Hopkins LLC
600 Superior Ave., Ste. 2100
Cleveland, OH 44114
(216) 348-5400
*cdean@mcdonaldhopkins.com*

Timothy J. Lowe
McDonald Hopkins PLC
39533 Woodward Avenue, Ste. 318
Bloomfield Hills, Michigan 48304
(248) 220-1359
*tlowe@mcdonaldhopkins.com*

Jennifer W. Torrez
McDonald Hopkins LLC
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
*jtorrez@mcdonaldhopkins.com*

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JOYCE WEHRLE, YVETTE GRIFFIN, and ALICE KLEINSCHMIDT, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>McLAREN HEALTH CARE CORPORATION, and BARBARA ANN KARMANOS CANCER INSTITUTE,<br><br>Defendants. | Case No. 25-cv-11420<br><br>Hon. Matthew F. Leitman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**


Christopher G. Dean
MCDONALD HOPKINS LLC
600 Superior Ave., Ste. 2100
Cleveland, OH 44114
(216) 348-5400
*cdean@mcdonaldhopkins.com*

Timothy J. Lowe
MCDONALD HOPKINS PLC
39533 Woodward Avenue, Ste. 318
Bloomfield Hills, Michigan 48304
(248) 220-1359
*tlowe@mcdonaldhopkins.com*

Jennifer W. Torrez
MCDONALD HOPKINS LLC
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
*jtorrez@mcdonaldhopkins.com*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ..... ii

MOST CONTROLLING AUTHORITY ..... iv

TABLE OF AUTHORITIES ..... vi

I. INTRODUCTION ..... 1

II. ALLEGED FACTS & CLAIMS ..... 2

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. Count I for Breach of Fiduciary Duty Fails to Allege a Duty or Damages ..... 5

B. Count II Fails to State a Claim for Violation of the ECPA ..... 8

C. Count III for Invasion of Privacy Fails to State a Claim for Intrusion Upon Seclusion ..... 14

D. Count IV for Breach of Implied Contract Fails to Allege Contract Formation or Damages ..... 16

1. Plaintiffs fail to allege mutual assent ..... 17

2. Plaintiffs fail to allege the exchange of consideration ..... 18

3. Plaintiffs fail to allege legally cognizable damages ..... 20

E. Count V Fails to Allege the Elements of Unjust Enrichment ..... 20

F. Count VI for Negligence Fails for Lack of Damages ..... 23

V. CONCLUSION ..... 24

**STATEMENT OF ISSUES**

1. Whether the Court should dismiss Plaintiffs' claim for breach of fiduciary duty (Count I) where (a) Defendants did not owe a relevant fiduciary duty to Plaintiffs, and (b) Plaintiffs fail to allege damages cognizable under Michigan law.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

2. Whether the Court should dismiss Plaintiffs' claim for violation of the Electronic Communication Privacy Act ("ECPA") (Count II) because (a) the ECPA is a one-party consent statute and Defendants cannot intercept their own communications as a matter of law, and (b) Plaintiffs fail to establish application of the "crime-tort" exception to the party exception.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

3. Whether the Court should dismiss Plaintiffs' claim for invasion of privacy (Count III) because Plaintiffs fail to state a claim for intrusion upon seclusion where they do not allege that Defendants obtained their personal data through an objectionable method.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

4. Whether the Court should dismiss Plaintiffs' claim for breach of implied contract (Count IV) where Plaintiffs fail to allege (a) mutual assent to any purported contractual terms; (b) the exchange of consideration; and (c) contract damages cognizable under Michigan law because they allege only speculative and intangible harms.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

5. Whether the Court should dismiss Plaintiffs' claim for unjust enrichment (Count V) because they fail to plead that they conferred a benefit upon Defendants and, even if they could establish a benefit conferred, they nevertheless fail to plead an unjust retention of any benefit.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

6. Whether the Court should dismiss Plaintiffs' claim for negligence (Count VI) because they fail to plead an actual, present injury as required under Michigan law to establish cognizable damages.

| | |
|---|---|
| Defendants' answer: | Yes |
| The Court should answer: | Yes |

## MOST CONTROLLING AUTHORITY

**Standard for Motion to Dismiss**

- Fed. R. Civ. P. 12(b)(6)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010)

**Breach of Fiduciary Duty Claim**

- *Highfield Beach at Lake Mich. v. Sanderson*, 331 Mich. App. 636 (2020)
- *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707 (E.D. Mich. 2005)
- *Henry v. Dow Chem. Co*., 473 Mich. 63 (2005)

**ECPA Claim**

- 18 U.S.C. § 2511(2)(d)
- *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836 (N.D. Cal. 2017)
- *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010)
- *Boddie v. ABC, Inc.*, 881 F.2d 267 (6th Cir. 1989)
- *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995)
- *In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)
- *Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081, 2025 WL 2808055 (D. Mass. Aug. 29, 2025)
- *Martinez v. Mentavi, Inc.*, No. 25-cv-228 (E.D. Mich. Oct. 9, 2025)

**Invasion of Privacy Claim**

- *Foundation for Behavioral Resources v. W. E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406 (2020)
- Doe *v. Mills,* 212 Mich. App. 73 (1995)
- *Lansing Ass'n of School Adm'rs v. Lansing School Dist. Bd. of Educ.*, 216 Mich. App. 79 (1996)
- *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592 (2014)

**Breach of Implied Contract Claim**

- *In re Estate of Lewis*, 168 Mich. App. 70 (1988)
- *Detroit v. Highland Park*, 326 Mich. 78 (1949)
- *Mallory v. City of Detroit*, 181 Mich. App. 121 (1989)
- *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498 (6th Cir. 1995)
- *Erickson v. Goodell Oil Co.*, 384 Mich. 207 (1970)
- *Burkhardt v. Bailey*, 260 Mich. App., 636 (2004)
- *GMC v. Dep't of Treasury, Revenue Div.*, 466 Mich. 231 (2002)
- *Alar v. Mercy Mem'l Hosp*., 208 Mich. App. 518 (1995)
- *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161 (2014)
- *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505 (2003)
- *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592 (2014)

**Unjust Enrichment Claim**

- *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (2006)
- *Hall v. Centerspace, LP*, No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023)
- *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016)
- *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192 (2017)

**Negligence Claim**

- *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592 (2014)
- *Henry v. Dow Chem. Co.*, 473 Mich. 63 (2005)
- *Nyman v. Thomson Reuters Holdings, Inc.*, 329 Mich. App. 539 (2019)
- *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339 (Mich. App. Oct. 14, 2021)

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Alan Custom Homes, Inc. v. Krol*,
256 Mich. App. 505 (2003) ....................20

*Alar v. Mercy Mem'l Hosp.*,
208 Mich. App. 518 (1995) ....................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................11, 12, 13

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ....................13

*Boddie v. ABC, Inc.*,
881 F.2d 267 (6th Cir. 1989) ....................10

*Burkhardt v. Bailey*,
260 Mich. App. 636 (2004) ....................17

*Burton v. William Beaumont Hosp.*,
373 F. Supp. 2d 707 (E.D. Mich. 2005) ....................6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................10, 12

*Delphi Auto. PLC v. Absmeier*,
167 F. Supp. 3d 868 (E.D. Mich. 2016) ....................6

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................10

*Detroit v. Highland Park*,
326 Mich. 78 (1949) ....................16

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592 (2014) ....................................................................20

*Doe v. Lawrence Gen. Hosp.*,
No. 25-cv-10081, 2025 WL 2808055 (D. Mass. Aug. 29, 2025) .................10

*Doe v. Mills*,
212 Mich. App. 73 (1995) ......................................................................14

*Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*,
507 F. Supp. 3d 814 (E.D. Mich. 2020) ....................................................17

*Erickson v. Goodell Oil Co.*,
384 Mich. 207 (1970) ..............................................................................17

*Found. For Behavioral Res. V. W. E. Upjohn Unemployment Trustee Corp.*,
332 Mich. App. 406 (2020) ......................................................................14

*Fritz v. Charter Twp. Of Comstock*,
592 F.3d 718 (6th Cir. 2010) .....................................................................5

*Gen. Aviation, Inc. v. Cap. Region Airport Auth.*,
224 Mich. App. 710 (1997) ......................................................................19

*GMC v. Dep't of Treasury, Revenue Div.*,
466 Mich. 231 (2002) ..............................................................................18

*Hall v. Centerspace, LP*,
No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023)....................21

*Harris v. Mercy Health Network, Inc.,*
No. 4:23-cv-00195-SHL-SBJ, 2024 WL 5055556 (S.D. Iowa
June 26, 2024)...........................................................................................6

*Henry v. Dow Chem. Co.*,
473 Mich. 63 (2005) ..........................................................................7, 23

*Highfield Beach at Lake Mich. V. Sanderson*,
331 Mich. App. 636 (2020) ........................................................................6

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017)....8

*In re Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....21

*In re Google Cookie Placement Consumer Priv. Litig*,
806 F.3d 125 (3rd Cir. 2015)....12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....11

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
No. 14-MD-2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018)....22

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016)....22

*Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*,
65 F.3d 498 (6th Cir. 1995)....17

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....9

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....15, 16

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
319 Mich. App. 192 (2017)....22

*Lansing Ass'n of School Adm'rs v. Lansing School Dist. Bd. Of Educ.*,
216 Mich. App. 79 (1996)....15

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016)....22

*Mallory v. City of Detroit*,
181 Mich. App. 121 (1989)....16

*Martinez v. Mentavi, Inc.*,
No. 25-cv-228 (E.D. Mich. Oct. 9, 2025)....................................................11

*Miller-Davis Co. v. Ahrens Const., Inc.*,
495 Mich. 161 (2014) ............................................................................20

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187 (2006) ....................................................................21

*Nyman v. Thomson Reuters Holdings, Inc.*,
329 Mich. App. 539 (2019) ....................................................................24

*Penner v. Seaway Hosp.*,
169 Mich. App. 502 (1988) ....................................................................19

*Powers v. Peoples Cmty. Hosp. Auth.*,
183 Mich. App. 550 (1990) ....................................................................19

*Rakyta v. Munson Healthcare*,
No. 354831, 2021 WL 4808339 (Mich. App. Oct. 14, 2021).........7, 8, 23, 24

*Robinson v. Maintech Inc.*,
No. 23-04458, 2024 WL 5165325 (D.N.J. Dec. 19, 2024)...........................21

*Swickard v. Wayne Co. Medical Examiner*,
438 Mich. 536 (1991) ............................................................................15

*Welch v. United Network for Organ Sharing*,
767 F. Supp. 3d 746 (M.D. Tenn. 2025) .......................................................6

**Statutes**

18 U.S.C. §2511(2)(d)...........................................................................8, 9

Defendants McLaren Health Care Corporation ("McLaren") and Barbara Ann Karmanos Cancer Institute ("Karmanos," and together with McLaren, "Defendants"), in support of their Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Complaint," ECF No. 13), state as follows:

## I. INTRODUCTION

This class action is one of many filed throughout the country seeking to impose crushing liability on healthcare providers relating to the use of commonplace analytics technology on publicly available websites. Here, Plaintiffs Joyce Wehrle, Yvette Griffin, and Alice Kleinschmidt (collectively, "Plaintiffs") claim that Defendants employed analytics tools, including Meta Pixel, Google Analytics and Tag Manager, and the LinkedIn Insight Tag, commonly known as "pixels," to transmit information about users of its website to Meta, Google, and/or other third parties for marketing and advertising purposes. Plaintiffs do not allege that these tools were installed on Defendants' secure patient portals. Rather, their allegations are limited to web pages that can be accessed by anyone with an internet connection.

Despite that and their inability to allege actual injury, Plaintiffs seek to impose financially destructive statutory penalties of $10,000 per person under the federal Electronic Communications Privacy Act ("ECPA") *plus* additional monetary damages under state-law causes of action, including breach of fiduciary duty, invasion of privacy, breach of implied contract, unjust enrichment, and negligence.

Plaintiffs fail to state a claim. *First*, their breach of fiduciary duty claim fails because they do not allege the existence of a relevant duty or damages. *Second*, their ECPA claim fails because they do not allege an unauthorized interception or grounds to apply the statute's "crime-tort" exception. *Third*, their claim for intrusion upon seclusion fails because they do not allege the elements of that cause of action. *Fourth*, their breach-of-implied-contract claim fails because they do not allege mutual assent or consideration for a contract, or damages. *Fifth*, their unjust-enrichment claim fails because they did not plead that they conferred a benefit on Defendants or any unjust retention of some benefit. *Sixth*, their negligence claim fails because Plaintiffs have not alleged any actual injury or damages. For these reasons, and as set forth more fully below, the Complaint should be dismissed.

## II. ALLEGED FACTS & CLAIMS

McLaren is a Michigan nonprofit healthcare corporation headquartered in Grand Blanc, Michigan. (Compl. ¶ 11.) Karmanos, a wholly owned subsidiary of McLaren, is a cancer care and research institute. (*Id*. at 12.) Plaintiffs allege that Defendants own and operate distinct but interconnected public-facing websites—www.mclaren.org (the "McLaren Website") and www.karmanos.org (the "Karmanos Website," and together with the McLaren Website, the "Websites")—through which individuals and patients can access various healthcare-related resources, including information regarding providers, medical conditions, and

treatments. (*See id.* at ¶ 39.) Plaintiffs further allege that the Websites can be used for scheduling appointments and locating treatment facilities. (*Id.*)

Plaintiff Wehrle alleges that she has been a patient of McLaren since 2022, and during that time she claims she used the McLaren Website to book medical appointments. (*Id.* at ¶ 164.) Wehrle does not allege that she was a patient of Karmanos or ever visited the Karmanos Website. Plaintiff Griffin alleges that she has been a patient of McLaren for over twelve years and has used the McLaren Website numerous times during that period to, among other things, search for provider information and treatment information. (*Id.* at ¶ 166.) Like Wehrle, Griffin does not allege that she was a patient of Karmanos or ever visited the Karmanos Website. Plaintiff Kleinschmidt alleges that she has been a patient of McLaren since 2018 and a patient of Karmanos since January 2025. (*Id.* at ¶ 168.) Kleinschmidt alleges that she used the Websites multiple times during that period to schedule medical and cancer care appointments. (*Id.*)

According to Plaintiffs, Defendants deployed certain "tracking tools" on their Websites, which disclosed patients' sensitive health information and personal data to Meta, Google, and others. (*Id.* at ¶ 2.) Specifically, Plaintiffs claim that Defendants embedded the Meta Pixel, Google Analytics, Google Tag Manager, and the LinkedIn Insight Tag into the source code of the Websites, and that these technologies can collect information relating to a user's interaction with the Website.

(*Id*. at ¶¶ 2-4.) Plaintiffs allege that Defendants' "primary motivation" for employing these technologies "was the use of patient data for advertising . . . ." (*Id*. at ¶ 213.) Plaintiffs do not allege that the Meta Pixel, Google Analytics, Google Tag Manager, the LinkedIn Insight Tag, or any other third-party technologies were deployed on Defendants' secure patient portals.

Based on these allegations, Plaintiffs assert six causes of action: (1) breach of fiduciary duty; (2) violation of the ECPA; (3) intrusion upon seclusion; (4) breach of implied contract; (5) unjust enrichment; and (6) negligence. Plaintiffs seek to represent a nationwide class and a Michigan subclass, respectively defined as:

> All individuals residing in the United Sates who are, or were, patients of Defendants or any of their affiliates, used Defendants' Websites and had their Private Information disclosed to a third party without authorization. (*Id*. at ¶ 232.)
>
> All individuals residing in Michigan who are, or were, patients of Defendants or any of their affiliates, used Defendants' Websites, and had their Private Information disclosed to a third party without authorization or consent. (*Id*. at ¶ 233.)

Plaintiffs seek actual, statutory, and equitable relief, along with attorneys' fees and costs on behalf of themselves and the putative classes. (*Id*. at pp. 89-90.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Although the court must draw all reasonable inferences in favor of the plaintiff, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 679; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

Plaintiffs' claims fail as a matter of law. Each is addressed in turn below.

### A. Count I for Breach of Fiduciary Duty Fails to Allege a Duty or Damages.

Plaintiffs allege that Defendants breached their fiduciary duty to safeguard patient personal information. (Compl. ¶ 164.) To state a breach-of-fiduciary-duty

claim, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) breach of the duty; and (3) resulting damages. *Highfield Beach at Lake Mich. v. Sanderson*, 331 Mich. App. 636, 666 (2020) (citing *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016)). Here, Plaintiffs fail to allege a duty and damages.

As an initial matter, neither Wehrle nor Griffin alleges any relationship at all with Karmanos or connection to the Karmanos Website.[1] It is therefore inconceivable that Karmanos could owe either Plaintiff any fiduciary duty.

In any event, Defendants, as medical care facilities, do not owe a fiduciary duty to Plaintiffs in relation to the operation of their Websites. *See Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 723-24 (E.D. Mich. 2005) (holding hospital did not owe a fiduciary duty to patients with respect to billing practices, because "in the context of a doctor-patient relationship, Michigan courts have limited a fiduciary duty to medical care"); *see also Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 785 (M.D. Tenn. 2025) (collecting cases and finding federal and state courts have held that a hospital does not owe a fiduciary duty to patients). Courts around the country agree with that principle. *See, e.g.*, *Harris v. Mercy Health Network, Inc.*, No. 4:23-cv-00195-SHL-SBJ, 2024 WL 5055556, at *12 (S.D. Iowa June 26, 2024) (declining to establish a fiduciary duty between the plaintiffs and the

[1] For this reason, all of Wehrle's and Griffin's claims against Karmanos should be dismissed under Rule 12(b)(6).

defendant where the plaintiffs had "provid[ed] their Private Information in exchange for medical services" and holding that a patient may have "a claim for breach of fiduciary duty, if at all, only when the claim directly relates to the provision of medical advice or treatment") That principle is dispositive here.

Additionally, "Michigan law requires more than a merely speculative injury." *Henry v. Dow Chem. Co*., 473 Mich. 63, 72 (2005). As a result, "only damages that arise from an actual, present injury, are cognizable." *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *3 (Mich. App. Oct. 14, 2021) (citing *Henry*, 473 Mich. at 75-76). The present injury requirement "more clearly defines who actually possesses a cause of action," "reduces the risks of fraud," and ensures "that there will be standards—legally comprehensible standards that guide the judicial branch's resolution of the matters brought before it." *Henry*, 473 Mich. at 76.

In this case, Plaintiffs do not claim to have suffered any actual, present injury giving rise to non-theoretical, quantifiable, and compensable damages. For example, they do not claim to have suffered identity theft, misuse of funds, or impairment of credit due to any purported exposure of information. Instead, Plaintiffs claim to have suffered abstract injuries such as "invasion of privacy," "loss of the benefit of the bargain," "diminution in value" of personal information, and the potential for "ongoing risk" to personal information. (Compl. ¶ 6.) These speculative purported

injuries do not give rise to cognizable damages under Michigan law. *See Rakyta*, 2021 WL 4808339 at *3. Plaintiffs' breach-of-fiduciary-duty claim therefore fails.

**B. Count II Fails to State a Claim for Violation of the ECPA.**

In Count II of the Complaint, Plaintiffs allege that Defendants unlawfully intercepted and disclosed their electronic communications in violation of the ECPA. To state a claim for violation of the ECPA, a plaintiff must show that "the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted). Here, the claim fails because Defendants were the intended recipient of the alleged communications and thus could not "intercept" them as a matter of law.

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d). As such, it does not apply where the alleged interceptor was a party to the communication—the so-called party exception. Specifically, the statute provides:

> It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.*

In this case, the only communications Plaintiffs allege were intercepted were their interactions with the Websites, (Compl. ¶¶ 164-68)—to which Defendants were parties. Plaintiffs thus cannot state a claim under the ECPA. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("The Court concludes that [the defendant]—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. [The defendant] is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").

In a half-hearted attempt to circumvent the party exception by triggering the "crime-tort" exception to the exception, Plaintiffs allege that Defendants intercepted communications "for the purpose of committing a tortious or criminal act." (Compl. ¶ 273.) But Plaintiffs plead no facts to support that conclusion, instead relying on oblique references to "violations of HIPAA and invasion of privacy, among others." (*Id.*) This unsupported conclusion is insufficient to meet their pleading burden.

The crime-tort exception requires Plaintiffs to plausibly allege facts demonstrating that Defendants intercepted the communication "for the purpose" of committing a crime or tort. 18 U.S.C. § 2511(2)(d). As the Second Circuit explained:

> Congress chose the word "purpose" for a reason. Therefore, the offender must have as her objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act. But Congress limited the cause of action to instances *where one party to the conversation deliberately seeks to harm the other participant* through the information intercepted.

*Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (second emphasis added). In considering the crime-tort exception, the Sixth Circuit observed that, in light of the draconian statutory penalties available under the ECPA and "evil purposes" that it attempts to govern, it is "the use of the interception with intent to harm rather than the fact of interception that is critical to liability . . . ." *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) (internal quotations omitted). Consequently, it is not enough to allege the defendant acted with a purpose that may have *resulted* in a crime or tort. *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (upholding dismissal of ECPA claim where defendants did not send investigators into plaintiffs' office in order to commit a tort, even if the resulting broadcast was defamatory, because there was no evidence defendants' purpose was to defame plaintiffs).

Rather, as the District of Massachusetts recently held, "[f]rom the wording of the ECPA, it is evident that the language 'intercepted *for the purpose* of committing any criminal or tortious act' means that the goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort." *Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081, 2025 WL 2808055, at *7 (D. Mass. Aug.

29, 2025), *report and recommendation adopted in part, rejected in part sub nom.* No. 25-cv-10081, 2025 WL 2807673, at *1 (D. Mass. Sept. 30, 2025) (emphasis in original)[2]; *see In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Under this exception, plaintiffs must allege that either the 'primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously.'"); *see also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (similar holding in dismissing ECPA claim).

Following this logic, the Western District of Michigan recently dismissed an ECPA claim in a factually analogous case. *See Martinez v. Mentavi, Inc.*, No. 25-cv-228 (E.D. Mich. Oct. 9, 2025).[3] In *Martinez*, the court held that the ECPA's "purpose" requirement "requires a focus on the actor's primary—or their most determinative—reason for the interception." *Id.* at p. 8. The *Martinez* court observed that "a plaintiff can often allege at least an invasion of privacy tort as a consequence of the interception. If that were enough, the 'one-party consent' rule would be dead letter." *Id*. "Focusing on a party's primary motivation avoids that result and ensures continuing viability of both the 'one-party consent' rule and the crime-tort exception." *Id*. In *Martinez*, the plaintiffs' allegations demonstrated that the

[2] The Magistrate Judge's Report and Recommendation on the plaintiff's ECPA claim was adopted in its entirety.

[3] A copy of the October 9, 2025 Opinion and Order is attached hereto as **Exhibit A**.

defendant's primary motivation for intercepting data was commercial—not criminal or tortious—in nature because the complaint alleged that the defendant employed analytics technologies to increase revenues and profits. *Id*. at p. 9.

Here, Plaintiffs' allegations are even more stark. In fact, they expressly allege that Defendants' "*primary motivation*" for using third-party analytics technologies "was the use of patient data for advertising"—not for committing a crime or tort. (Compl. at ¶ 213) (emphasis added). Consequently, Plaintiffs did not—and cannot—assert that Defendants acted with a criminal or tortious purpose as required to state a claim for violation of the ECPA. Count II should be dismissed on this basis alone.

What's more, a plaintiff must not only plead a criminal or tortious purpose, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig*, 806 F.3d 125, 145 (3rd Cir. 2015) (quoting *Caro*, 618 F.3d at 100) (emphasis in original); *see also Eisenhower*, 721 F. Supp. 3d at 1065 (same). In other words, a "simultaneous tort arising from the act of recording itself is insufficient," because "[n]othing more is required after the interception is made for liability to attach based on this tort." *Caro*, 618 F.3d at 100-01. Consequently, Plaintiffs must allege that Defendants acted with the intent to commit a crime or tort separate from the use of analytics technology on the Websites.

*Eisenhower* is instructive. There, the plaintiffs based an ECPA claim on the allegation that the defendant "intercept[ed] their . . . information for [the defendant's] commercial advantage." 721 F. Supp. 3d at 1065. The court dismissed the claim, holding the plaintiffs failed to plead facts plausibly demonstrating that "this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable." *Id*. (citation omitted). On the plaintiff's motion for reconsideration, the court reaffirmed, explaining that vague references to HIPAA violations cannot serve as the basis for the ECPA's crime-tort exception. *B.K. v. Eisenhower Med. Ctr.*, No. 23-2092, 2024 WL 2037404, *4 (C.D. Cal. Apr. 11, 2024). Rather, specific factual allegations demonstrating a plausible independent crime or tort are required before the exception applies. *Id*. And where an alleged interception providing the basis for a claim for violation of the ECPA is the same disclosure providing the basis for a purported HIPAA violation, the "independent" requirement is not met. *Lawrence Gen. Hosp.*, 2025 WL 2808055 at *13.

Here, Plaintiffs have pled neither a criminal or tortious purpose nor an independent crime or tort. Indeed, they do not allege that Defendants purposely injured them or acted with deliberate intent to harm. Instead, as in *Eisenhower*, Plaintiffs expressly allege that Defendants employed tracking technology "for marketing purposes to bolster their revenues." (*Id*. at ¶ 133.) Indeed, Plaintiffs admit that advertising was "*the primary motivation*" for the use of these technologies. (*Id*.

at ¶ 213) (emphasis added). The most they can muster in an attempt to show some supposedly nefarious plan is the threadbare allegation that by "sending and acquiring the contents of Plaintiffs' and Class Members' communications relating to the browsing of Defendants' Websites . . . Defendants' purpose was tortious and designed to violate federal and state law . . . ." (Compl. ¶ 274.) That plainly is not enough. Even if Plaintiffs had alleged facts to support the existence of a tort, the issue is not whether a tort occurred, but whether Defendants acted with a deliberate intent to commit a crime or tort. There is no reason to infer such intent.

For all of these reasons, Plaintiffs' ECPA claim should be dismissed.

### C. Count III for Invasion of Privacy Fails to State a Claim for Intrusion Upon Seclusion.

In Michigan, invasion of privacy consists of four distinct torts: (1) intrusion upon seclusion; (2) public disclosure of embarrassing private facts; (3) publicity placing the plaintiff in a false light; or (4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Found. for Behavioral Res. v. W. E. Upjohn Unemployment Trustee Corp.*, 332 Mich. App. 406, 409 (2020). Here, Plaintiffs assert a claim for invasion of privacy based on intrusion upon seclusion, which requires them to prove: (1) the existence of a secret and private subject matter; (2) their right to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man. *Doe v. Mills,* 212 Mich. App. 73, 88 (1995) (citations omitted). Importantly, "[a]n

action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication; it is considered analogous to a trespass." *Id*.

Here, Plaintiffs fail to allege that Defendants obtained their information through some objectionable method. Indeed, Plaintiffs concede that they voluntarily provided information to Defendants through the Websites. (*See* Compl. ¶¶ 164-68.) As such, the provision of information to Defendants was not only expected, it was intended. Plaintiffs' grievance, then, is the purported *publication* of their information to third parties, not the manner in which it was obtained. Indeed, the Complaint makes clear at the outset that the alleged sharing of data with third parties is what Plaintiffs deem problematic. (*Id*. at ¶ 1 ("This is a class action lawsuit brought on behalf of individuals who used Defendants' websites . . . and whose private information Defendants disclosed to third parties . . . .").) In other words, "[i]t is the contemplated disclosure, not the method of the disclosure, that [Plaintiffs] find intrusive and objectionable," *Lansing Ass'n of School Adm'rs v. Lansing School Dist. Bd. of Educ.*, 216 Mich. App. 79, 88 (1996) ("*Lansing*") (citing *Swickard v. Wayne Co. Medical Examiner*, 438 Mich. 536, 549 n. 10 (1991))—which is insufficient to support an intrusion-upon-seclusion claim.

*Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023), another pixel case, is illustrative. As in Michigan, Illinois law distinguishes between the method of obtaining information and the publication of it. *Id.* at 848-49. The

*Kurowski* court dismissed the intrusion-upon-seclusion claim because "the harm caused by [the defendant], if any, continues to be its alleged disclosure of the [plaintiff's] private health information." *Id*. at 849. The same is true here. Defendants "cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that [they were] always the intended recipient of." *Id*. As such, Plaintiffs' claim fails and must be dismissed.

### D. Count IV for Breach of Implied Contract Fails to Allege Contract Formation or Damages.

Plaintiffs allege that, "as a condition of utilizing Defendants' Websites and receiving services from Defendants' health care facilities and professionals," Plaintiffs provided their "Personal Information and compensation for their medical care." (Compl. ¶ 289.) Based on that allegation, Plaintiffs conclude that they "entered [into] an implied contract pursuant to which Defendants agreed to safeguard and not disclose their Private Information without consent." (*Id*. at ¶ 290.)

An implied contract "does not exist, unless the minds of the parties meet, by reason of words or conduct." *Detroit v. Highland Park*, 326 Mich. 78, 100 (1949). Like an express contract, "[a]n implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989). Here, Plaintiffs fail to allege (1) mutual assent, (2) consideration to support formation of a contract, and (3) the requisite element of cognizable damages.

**1. Plaintiffs fail to allege mutual assent.**

"[A]n implied-in-fact contract arises between parties when those parties show a mutual intention to contract." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995). A contract can be implied in fact where the intention as to it is "gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 212 (1970). Mutual assent, or a meeting of the minds, as to "all essential terms of a contract" is a "fundamental tenet of all contracts." *Burkhardt v. Bailey*, 260 Mich. App. 636, 655 (2004); *see also Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 828 (E.D. Mich. 2020) (dismissing breach-of-implied-contract claim for failure to allege mutual assent to terms).

Here, the Complaint is devoid of allegations relating to specific conduct, language, or circumstances from which an agreement to be bound can be inferred. Instead, Plaintiffs point to a general statement allegedly appearing in Defendants' shared Privacy Policy, which states "[w]e are responsible for the protection of all personal information in our possession custody or control . . ." (Compl. ¶ 207.) Moreover, Plaintiffs do not allege that they received, reviewed, or understood this statement to be some sort of contractual commitment from Defendants. Indeed, Plaintiffs repeatedly claim that the shared Privacy Policy is not readily available and,

as such, "it is highly unlikely that users would even be aware of the existence of the Privacy Policy, let alone its contents." (*Id*. at ¶ 204.) As such, Plaintiffs' allegations fall far short of alleging circumstances supporting an inference of mutual assent to *any*—let alone "all"—contractual terms. Absent allegations that terms existed and that the parties discussed, understood, or were even aware of those necessary terms, Plaintiffs have not alleged a meeting of the minds for purposes of contract formation.

**2. Plaintiffs fail to allege the exchange of consideration.**

Consideration is a bargained-for exchange. *GMC v. Dep't of Treasury, Revenue Div.*, 466 Mich. 231, 238 (2002). "There must be a benefit on one side, or a detriment suffered, or service done on the other." *Id*. at 238-39.

Here, Plaintiffs do not allege that *they* provided any consideration for a supposed contract. They do not, for example, claim to have paid Defendants for the use of their respective Websites. Nor could they; the Websites are accessible to the public at large. And although Plaintiffs claim to have paid for medical care, (*see* Compl. ¶ 289), those payments cannot constitute consideration because no connection exists between them and the purported agreement at issue. The alleged payments, in other words, were by Plaintiffs' admission for medical treatment, *not* Website usage or data security.

Moreover, Plaintiffs fail to allege that *Defendants* provided any consideration for the purported contract. Although consideration need not be substantial and can

be as simple as a promise, Plaintiffs do not allege any promise by Defendants. Even if they had alleged some promise to protect information, that would not be enough because a "pledge to undertake a preexisting statutory duty is not supported by adequate consideration." *Gen. Aviation, Inc. v. Cap. Region Airport Auth.*, 224 Mich. App. 710, 715 (1997) (affirming dismissal of contract claim where defendant owed a preexisting obligation under the Michigan Aeronautics Code); *Alar v. Mercy Mem'l Hosp.*, 208 Mich. App. 518, 525 (1995) (hospital promise to keep patient information confidential not consideration due to preexisting duty to protect information). Thus, where the law requires a party to take certain actions, those actions cannot be recast as contractual obligations. *See Gen. Aviation*, 224 Mich. App. at 715.[4] Here, Plaintiffs not only fail to specify *any* consideration provided by Defendants, they expressly allege that Defendants had preexisting statutory and common-law duties to maintain the confidentiality of their information. (*See, e.g.*, Compl. ¶ 5.) Thus, any purported commitment by Defendants to comply with those alleged duties is not legally valid consideration to support contract formation.

[4] This principle applies to contracts express and implied, including with respect to healthcare providers. *See, e.g.*, *Powers v. Peoples Cmty. Hosp. Auth.*, 183 Mich. App. 550, 554 (1990); *Penner v. Seaway Hosp.*, 169 Mich. App. 502, 511 (1988).

### 3. Plaintiffs fail to allege legally cognizable damages.

A claim for breach of contract requires damages. *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014). Damages are not presumed; they must be proved with "reasonable certainty" and are recoverable only if they "are the direct, natural, and proximate result of [a] breach." *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512 (2003). Nor may they be speculative. *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 602 (2014) ("Because [plaintiff's] speculative damages derive from a possible future harm that might or might not occur, rather than directly from the breach of contract, plaintiff may not recover under contract law . . . .").

Here, Plaintiffs do not claim to have suffered any legally cognizable contract damages. For example, they do not allege any facts suggesting that they (or putative class members) spent money on credit monitoring or incurred any other form of out-of-pocket losses arising from the use of Defendants' Websites. Accordingly, Plaintiffs' do not claim to have suffered any actual, non-speculative loss that can be recovered under a breach-of-contract theory.

For each and all of the foregoing reasons, Count IV should be dismissed.

## E. Count V Fails to Allege the Elements of Unjust Enrichment.

In Count V for unjust enrichment, Plaintiffs allege that Defendants "benefit from the use of" their personal information and "unjustly retained those benefits." (Compl. ¶ 297.) To state a cause of action for unjust enrichment, a "plaintiff must

establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006). Plaintiffs fail to plead either a benefit conferred or an unjust retention.

First, Plaintiffs fail to plead that they conferred a benefit on Defendants. "Courts have . . . routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (internal quotation omitted) (collecting cases and dismissing unjust-enrichment claim); *see also Robinson v. Maintech Inc.*, No. 23-04458, 2024 WL 5165325, at *3 (D.N.J. Dec. 19, 2024) ("[C]ourts in this district have dismissed similar unjust enrichment claims based on 'conferring' PII."); *Hall v. Centerspace, LP*, No. 22-cv-2028, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023) (dismissing claim where plaintiff did "not identify a benefit plausibly conferred upon [defendant] through the provision of PII"). Thus, Plaintiffs' unsupported conclusion that they conferred a benefit in the form of personal information is insufficient. The unjust-enrichment claim therefore fails.

Second, even if the provision of personal information were a form of benefit, Plaintiffs do not allege that they provided the information in exchange for data-security services from Defendants. In fact, the only thing Plaintiffs claim to have paid for is "health care services," (Compl. ¶ 194), which is distinct from use of the

Websites, inasmuch as any person with an internet connection can use the Websites without ever receiving, much less paying for, medical care.

Third, Plaintiffs' theory that they would have paid less for services had they known about Defendants' alleged use of tracking tools applies "only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect." *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016); *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586, 2018 WL 1189327, at *16 (D. Minn. Mar. 7, 2018) (same). Plaintiffs do not allege that there was anything dangerous or defective about the health care services they received. Accordingly, any overpayment theory is inapplicable here.

And fourth, Plaintiffs have not pled unjust retention of a benefit (to the extent a benefit exists). Even if Plaintiffs' provision of personal information through their activity on the Websites could be considered a benefit, "not all enrichment is necessarily unjust." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 205 (2017). No dispute exists that Plaintiffs received the medical treatment and information they supposedly sought from Defendants; the quality of Defendants' care is not at issue. *Cf. Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust-enrichment claim against restaurant because plaintiff "did not pay for a side order of data security and

protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom").

Plaintiffs' unjust-enrichment theory fails for any and all of these reasons.

### F. Count VI for Negligence Fails for Lack of Damages.

To state a negligence claim, a plaintiff must plead facts demonstrating the existence of a duty, breach of that duty, causation, and damages. *Henry v. Dow Chem. Co*., 473 Mich. 63, 72 (2005). "Underlying these four elements is the issue of injury, and it is well settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury." *Henry Ford*, 308 Mich. App. at 600. "Michigan law requires more than a merely speculative injury." *Henry*, 473 Mich. at 72. The Michigan Supreme Court has emphasized that it "is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Id.* at 73 (emphasis in original); *see also Rakyta*, 2021 WL 4808339 at *3 ("[O]nly damages that arise from an actual, present injury, are cognizable under Michigan law."). Here, Plaintiffs fail to properly plead an actual, present injury.

Plaintiffs must plead more than a mere speculative injury. *See*, *supra* § IV(A). Despite that, Plaintiffs do not allege any actual or attempted impairment to their identity or credit, as is necessary to establish an actionable injury under Michigan law. Instead, Plaintiffs allege only theoretical harms like "invasion of privacy," "loss of the benefit of the bargain," "diminution in value" of personal information, and the

potential for "ongoing risk" to personal information. (*See* Compl. ¶ 6.) These are the same types of amorphous and speculative injuries that Michigan courts have consistently rejected as insufficient to demonstrate an actual, present injury. *See, e.g.*, *Henry Ford*, 308 Mich. App. at 601; *Nyman v. Thomson Reuters Holdings, Inc.*, 329 Mich. App. 539, 553-54 (2019); *Rakyta*, 2021 WL 4808339 at *3 (all affirming dismissal). Absent well-pled facts showing an actual injury giving rise to legally cognizable damages, Plaintiffs fail to state a claim for negligence.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Plaintiffs' First Amended Class Action Complaint, and award Defendants such other and further relief as is appropriate.

Respectfully Submitted,

Dated: October 22, 2025

By: */s/ Christopher G. Dean*

Christopher G. Dean
MCDONALD HOPKINS LLC
600 Superior Ave., Ste. 2100
Cleveland, OH 44114
(216) 348-5400
*cdean@mcdonaldhopkins.com*

Timothy J. Lowe
MCDONALD HOPKINS PLC
39533 Woodward Avenue, Ste. 318
Bloomfield Hills, Michigan 48304
(248) 220-1359
*tlowe@mcdonaldhopkins.com*

Jennifer W. Torrez
MCDONALD HOPKINS LLC
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
*jtorrez@mcdonaldhopkins.com*

*Counsel for Defendants*