**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JOYCE WEHRLE, YVETTE GRIFFIN, and ALICE KLEINSCHMIDT, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>McLAREN HEALTH CARE CORPORATION, and BARBARA ANN KARMANOS CANCER INSTITUTE,<br><br>Defendants. | Case No. 2:25-cv-11420-MFL-CI<br><br>Hon. Matthew F. Leitman |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Joyce Wehrle, Yvette Griffin, and Alice Kleinschmidt (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully request the Court deny Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, filed October 22, 2025 (ECF No. 16) ("Motion" or "MTD") for the reasons set forth in the attached Memorandum of Law.

Dated: November 12, 2025 **COULSON P.C.**

/s/ *Nicholas A. Coulson*

Nicholas A. Coulson, Esq. (P78001)
Ellyn Gendler (P88255)
300 River Place Drive, Suite 1700
Detroit, MI 48207
T: (313) 644-2685
E: nick@coulsonpc.com
E: egendler@coulsonpc.com

Katrina Carroll, Esq.*
Kyle Shamberg, Esq.*
CARROLL SHAMBERG LLC
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Tel. 872-215-6205
katrina@csclassactions.com
kyle@csclassactions.com

David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

Don Bivens*
don@donbivens.com
DON BIVENS, PLLC
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

**pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Putative Class*

*Attorneys for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

JOYCE WEHRLE, YVETTE GRIFFIN, and ALICE KLEINSCHMIDT, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

McLAREN HEALTH CARE CORPORATION, and BARBARA ANN KARMANOS CANCER INSTITUTE,

Defendants.

Case No. 2:25-cv-11420-MFL-CI

Hon. Matthew F. Leitman

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


STATEMENT OF ISSUES ..... ii

MOST CONTROLLING AUTHORITY ..... iii

INDEX OF AUTHORITIES ..... iv

INTRODUCTION ..... 1

FACTUAL ALLEGATIONS ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. PLAINTIFFS STATE CLAIMS UNDER THE ECPA. ..... 5

A. Defendant's Interceptions Were Committed for Purposes of Tortious/And or Criminal Disclosure. ..... 7

B. The Tortious and Criminal Disclosure of Plaintiffs' Private Information Was Independent of Its Interception. ..... 14

II. PLAINTIFFS HAVE PLEADED AN ACTUAL PRESENT INJURY. ..... 16

III. DEFENDANTS' WEBSITES ARE AN EXTENSION OF THEIR MEDICAL PRACTICE AND SUBJECT TO THEIR FIDUCIARY DUTIES. ..... 19

IV. PLAINTIFFS' ALLEGATIONS ESTABLISH AN OBJECTIONABLE INTRUSION ..... 22

V. PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT. ..... 24

CONCLUSION ..... 25

## STATEMENT OF ISSUES

1. Whether the Court should deny Defendant's Motion to Dismiss Plaintiffs' claim for violation of the Electronic Communication Privacy Act ("ECPA") (Count II) because the Crime-Tort Exception Applies to Plaintiffs' claim.

   Plaintiffs' Answer: Yes

   The Court should answer: Yes

2. Whether the Court should deny Defendants' Motion to Dismiss Plaintiffs' claims for Breach of Fiduciary Duty (Count I) and Negligence (Count VI) because Plaintiffs have sufficiently alleged actual present injuries to support damages.

   Plaintiffs' Answer: Yes

   The Court should answer: Yes

3. Whether the Court should deny Defendants' Motion to Dismiss Plaintiffs' claim for Breach of Fiduciary Duty (Count I) where Defendants did owe a relevant fiduciary duty to Plaintiffs as medical providers.

   Plaintiffs' Answer: Yes

   The Court should answer: Yes

4. Whether the Court should deny Defendants' Motion to Dismiss Plaintiffs' claim for Invasion of Privacy (Count III) because Plaintiffs' allegations establish an objectionable intrusion.

   Plaintiffs' Answer: Yes

   The Court should answer: Yes

5. Whether the Court should deny Defendants' Motion to Dismiss Plaintiffs' claim for Unjust Enrichment (Count V) because Plaintiffs have pleaded a benefit conferred and an unjust retention.

   Plaintiffs' Answer: Yes

   The Court should answer: Yes

# MOST CONTROLLING AUTHORITY

**Standard for Motion to Dismiss**

1. Fed. R. Civ. Proc. 12(b)(6)
2. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

**ECPA**

1. 18 U.S.C. § 2511(2)(d)
2. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)
3. *Lugo v. Inova Health Care Servs.,* No. 1:24-cv-700 (PTG/WEF), 2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025)
4. *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369 (S.D.N.Y. 2024)
5. *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025)

**Actual, Present Injury**

1. *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-cv-01126, 2023 U.S. Dist. LEXIS 222175 (W.D. Mich. Sep. 28, 2023)

**Existence Of Fiduciary Duty**

1. *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868 (E.D. Mich. 2016)
2. *Melynchenko v. Clay*, 152 Mich. App. 193 (1986)

**Intrusion Upon Seclusion**

1. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023)
2. *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023)
3. *Lewis v. LeGrow*, 258 Mich. App. 175 (2003)

**Unjust Enrichment**

1. *Halaburda v. Bauer Publ'g Co., LP*, No. 12-CV-12831, 2013 U.S. Dist. LEXIS 109954 (E.D. Mich. Aug. 5, 2013)

# INDEX OF AUTHORITIES

**CASES** **Page(s)**


*Abdelmaguid v. Dimensions Ins. Grp., LLC,*
2024 Mich. App. LEXIS 1044 (Ct. App. Feb. 8, 2024) ....................................16

*A.D. v. Aspen Dental Mgmt., Inc.,*
2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sep. 9, 2024) .................... 11, 13, 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)..........................................................4

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)............................................4

*Bero Motors v. Gen. Motors Corp.,*
2001 Mich. App. LEXIS 2029 (Mich. Ct. App. Oct. 2, 2001)........................20

*B.K. v. Desert Care Network,*
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) .................................10

*B.K. v. Eisenhower Med. Ctr.* ("*Eisenhower I*"),
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..........................................................16

*B.K. v. Eisenhower Med. Ctr. ("Eisenhower III"),*
2025 LX 403253 (C.D. Cal. Oct. 20, 2025)......................................................16

*Burton v. William Beaumont Hosp.,*
373 F. Supp. 2d 707 (E.D. Mich. 2005)...................................................... 20-21

*Caro v. Weintraub,* 618 F.3d 94 (2d Cir. 2010)................................................15

*Castillo v. Costco Wholesale Corp.,*
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024)........................11

*Cooper v. Mount Sinai Health Sys., Inc.,*
742 F. Supp. 3d 369 (S.D.N.Y. 2024)........................................................ 10-11

*Cousin v. Sharp Healthcare,*
681 F. Supp. 3d 1117 (S.D. Cal. 2023)............................................................23

*Dalley v. Dykema Gossett, P.L.L.C.*, 287 Mich. App. 296 (2010) ..........................24

*Delphi Auto. PLC v. Absmeier*,
167 F. Supp. 3d 868 (E.D. Mich. 2016)..........................................................20

*Descamp-Wuerth v. Bendix Aerospace Sector of Allied-Signal, Inc.*,
1990 U.S. Dist. LEXIS 7842 (W.D. Mich. June 25, 1990) .............................14

*Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592 (2014)........................... 17-18

*Doe v. Lawrence Gen. Hosp.*,
2025 U.S. Dist. LEXIS 195964 (D. Mass. Aug. 29, 2025) .............................12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..........................................................14

*Doe v. Wellstar Health Sys., Inc.*,
2025 U.S. Dist. LEXIS 209327 (N.D. Ga. Aug. 21, 2025) .............................11

*Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11 (2006)..........................24

*Garback v. Lossing*,
2010 U.S. Dist. LEXIS 99059 (E.D. Mich. Sep. 20, 2010)....................... 22-23

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024)..............................11

*Halaburda v. Bauer Publ'g Co., LP*,
2013 U.S. Dist. LEXIS 109954 (E.D. Mich. Aug. 5, 2013) ............................25

*Harris v. City of Flint*,
2024 U.S. Dist. LEXIS 196480 (E.D. Mich. Oct. 29, 2024) .............................4

*Hartley v. Univ. of Chi. Med. Ctr.*,
2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) .......................... 10, 15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).........................................................................15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................................................7

*In re Grp. Health Plan Litig.,* 709 F. Supp. 3d 707 (D. Minn. 2023) ......... 10-11, 23

*I.T. v. ChoicePoint LLC,*
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025)........... 11-12, 15

*Kane v. Univ. of Rochester,*
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ..............................10

*Kaul v. Raina,*
2004 Mich. App. LEXIS 663 (Ct. App. Mar. 4, 2004)....................................24

*K.L. v. Legacy Health,*
2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024) .................................11

*Kurowski v. Rush Sys. for Health,*
2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)...............................10

*Lewis v. LeGrow,* 258 Mich. App. 175 (2003) ........................................................24

*Lugo v. Inova Health Care Servs.,*
2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025) ...................... 9-10, 14

*Martinez v. Mentavi,* No. 25-cv-228 (W.D. Mich. Oct. 9, 2025) ...................... 13-14

*Melynchenko v. Clay,* 152 Mich. App. 193 (1986)..................................................20

*Pattison v. Teladoc Health, Inc.,*
2025 U.S. Dist. LEXIS 121044 (S.D.N.Y. June 25, 2025) ....................... 11, 16

*R.S. v. Prime Healthcare Servs.,*
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........................... 11, 15

*Saldana v. Kelsey-Hayes Co.,* 178 Mich. App. 230 (1989).....................................24

*Sizzling Black Rock Steak House Franchising, Inc. v. Harold L. Kestenbaum, PC,* 2024 LEXIS 126363 (E.D. Mich. July 17, 2024) ............................................19

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) ................................11

*Spreitzer v. Hutchison*,
2018 Mich. App. LEXIS 686 (Mich. App. Mar. 20, 2018) ............................20

*Sussman v. Am. Broad. Cos, Inc.*, 186 F.3d 1200 (9th Cir. 1999).......................7, 15

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 U.S. Dist. LEXIS 211708 (D. Minn. Sep. 30, 2025)...............................11

**RULES**

Federal Rules of Civil Procedure Rule 8(a)...........................................................4

Federal Rules of Civil Procedure Rule 12(b)(6)....................................................25

**STATUTES**

18 U.S.C. § 2511 ..........................................................................................5

18 U.S.C. § 2511(2)(d)...................................................................................6, 9

**OTHER AUTHORITIES**

Steve Alder, *OCR Updates Guidance on the Use of Online Tracking Technologies by HIPAA Regulated Entities*, HIPAA Journal (Mar. 19, 2024), https://www.hipaajournal.com/ocr-updated-online-tracking-technology-guidance/. ...........................................................................8

# INTRODUCTION

Defendants McLaren Health Care Corporation and Barbara Ann Karmanos Cancer Institute (collectively, "Defendants" or "McLaren") are HIPAA-regulated entities that engaged in a concerted, years-long scheme to intentionally disclose their patients' confidential personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") to tech giants like Meta, Google and LinkedIn, without patient knowledge or consent. The disclosed information includes the most sensitive, personal information imaginable, including data regarding health, treatments, facilities, search queries, physicians, and appointments. First Amended Complaint at ¶¶ 139-58, PageID.193-198.[1] Along with medical information, McLaren also shared its patients' persistent identifiers allowing third parties to personally identify them and associate health information with their digital profiles. ¶¶ 144, 159-60, PageID.194, 198. Defendants' conduct is illegal.

The prohibition against disclosure of patient health information without consent is not new. Rather, the Office for Civil Rights in the U.S. Department of Health and Human Services ("OCR") is clear that medical providers are not permitted to use trackers in this manner. *See* ¶¶ 28-29, PageID.159-160. The Federal Trade Commission has been cracking down on pixel data sharing by healthcare

[1] Plaintiffs' First Amended Complaint (the "FAC") shall be cited as ¶___.

companies since 2021, over four years before this lawsuit was filed. ¶¶ 22-27, PageID.156-160. And Michigan law specifically provides for the protection of PHI against unauthorized disclosure. ¶¶ 30-32, PageID.160. It is inconceivable that, as highly regulated and HIPAA-covered entities, Defendants were unaware of their obligations.

Defendants seek to frame their actions as uncontroversial marketing practices. Their arguments suggest medical providers should be free to monetize patient information and ignore privacy laws—a legally baseless and deeply troubling position. Further, Defendants' Motion to Dismiss asks the Court to make factual determinations that are inappropriate for the pleading stage. Defendants' motion should be denied.[2]

## FACTUAL ALLEGATIONS

Defendants operate two websites, www.mclaren.org and www.karmanos.org ("Websites"), which patients use to access medical care, including searching for physicians, scheduling appointments, paying for services, and accessing medical information. ¶ 39, PageID.162. These functions require users to input sensitive personal and health information. ¶ 40, PageID.162-163.

[2] Having reviewed Defendants' Motion, Plaintiffs agree to dismiss their claim for Breach of Implied Contract (Count IV of the First Amended Complaint). Plaintiffs request that Defendants' motion be denied in all other respects.

Defendants purposefully embedded on their Websites tracking technologies from companies like Google, Meta, and LinkedIn, which surreptitiously intercepted and disclosed users' private health data, including medical conditions, physician choices, treatment preferences, and appointment details, to those companies. ¶¶ 44-163, PageID.163-199. The trackers also transmitted identifiers (e.g., Facebook IDs, Google cookies, IP addresses) enabling the third parties to link users' activity to their digital profiles. ¶¶ 133-34, 144-45, 170, PageID.194, 201. Defendants and these companies then use the data for commercial gain. ¶¶ 133-34, PageID.191-192.

Plaintiffs reasonably expected their communications with Defendants—made in the context of seeking medical care—to remain private. ¶¶ 171-72, 178, PageID.201-02. Instead, Defendants disclosed this sensitive health data to third parties for non-medical purposes without informed consent or notice. ¶¶ 135-37, 179, PageID.192, 203. These actions violate HIPAA, FTC regulations, industry standards, and Michigan law protecting personal health information. *See* ¶¶ 22-32, PageID.156-60. Regulators have scrutinized pixel data sharing since 2021, making it implausible that Defendants were unaware of their legal obligations. *Id.*

On May 14, 2025, Plaintiff Joyce Wehrle filed this class action against McLaren. ECF No. 1. Defendants moved to dismiss, ECF No. 9, and the Court entered an order permitting Plaintiff to amend to address Defendants' arguments. ECF. No. 10, 12. At the time this suit was filed, Plaintiff Griffin had a separate class

action pending in state court. Having learned of the multiple cases, Plaintiffs (and their then-separate counsel) recognized that consolidation would result in greater efficiencies. On September 8, 2025, Plaintiffs Wehrle, Griffin and additional Plaintiff Kleinschmidt filed the operative FAC. ECF No. 13. Defendants moved to dismiss the FAC on October 22, 2025. ECF No. 16 ("MTD").

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss, a court must take all factual allegations as true and make all reasonable inferences in the plaintiffs' favor. *Id.*; *Harris v. City of Flint*, No. 24-10417, 2024 U.S. Dist. LEXIS 196480, at *5 (E.D. Mich. Oct. 29, 2024) ("At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.").

As numerous courts have found in similar cases, the averments in the FAC are sufficient to support each of Plaintiffs' claims beyond the plausibility standard.

# ARGUMENT

## I. PLAINTIFFS STATE CLAIMS UNDER THE ECPA.

Plaintiffs allege that McLaren violated the ECPA, which proscribes the *interception* of Plaintiffs' electronic communications, the *disclosure* of Plaintiffs' electronic communications, and the *use* of the contents of those electronic communications. ¶¶ 261-78, PageID.227-232; 18 U.S.C. § 2511. Plaintiffs repeatedly allege that Defendants intentionally installed and configured tracking tools (the Meta Pixel, Google Analytics, and the LinkedIn Insight Tag) on their Websites to intercept users' communications and identities, not for treatment, but to disclose the content of those communications. The FAC is replete with detailed allegations concerning each technology Defendants used in improperly disclosing patient communications. *See* ¶¶ 71-96, PageID.171-179 (Meta Pixel); ¶¶ 97-103, PageID.179-181 (Conversions Application Programming Interface ("CAPI")); ¶¶ 104-14, PageID.182-186 (Google Analytics); ¶¶ 115-29, PageID.186-190 (LinkedIn). As explained below, courts routinely hold that, like here, the use of trackers to intercept and disclose communications to third parties is actionable under the ECPA.

Defendants' argument that, as intended recipients, they cannot be liable "as a matter of law" under the ECPA, MTD at 8, PageID.264, is untrue. Defendants are responsible under the crime-tort exception of the ECPA, which makes illegal the

interception of a communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

Defendants argue that Plaintiffs' ECPA claims do not fall within the "crime-tort" exception for two reasons. MTD, PageID.264-270. First, they argue that their purported motivation was commercial, rather than for criminal or tortious purposes. Second, they argue that Plaintiffs do not allege a tort separate from the interception itself. Both arguments suffer from the same fatal flaw: they ignore the distinction between the acts of (1) interception and (2) disclosure. But as voluminous authority recognizes, they are separate acts, with the latter (which is expressly unlawful) being *the purpose* of the former.

It makes no sense to undertake (as Defendants suggest) a cascading series of analyses into the motivations underlying motivations, especially on the pleadings and in the absence of discovery. Regardless, it is the *purpose of the interception* that matters, not *the purpose of the purpose* of the interception. Defendants make surprisingly little effort to contend with the voluminous authority that establishes this premise. Its arguments have been repeatedly rejected by courts reviewing remarkably similar complaints. This Court should follow suit.

### A. Defendant's Interceptions Were Committed for Purposes of Tortious/And or Criminal Disclosure.

Based on their failure to delineate between interception and disclosure, Defendants argue that Plaintiffs fail to allege a tortious or criminal purpose as is required for application of the crime-tort exception. *See* MTD, PageID.265-70. Not so. The FAC alleges that Defendants intentionally installed and configured tracking tools on their Websites to intercept users' communications *to disclose the content of those communications*. And the FAC details how each technology, operating clandestinely, was designed to disclose those communications. *See* ¶¶ 71-96, PageID.171-179 (Meta Pixel); ¶¶ 97-103, PageID.179-181 (CAPI); ¶¶ 104-14, PageID.182-186 (Google Analytics); ¶¶ 115-29, PageID.186-190 (LinkedIn).

Contrary to Defendants' flawed interpretation, the crime-tort exception does not require the commission of a crime or tort solely for the sake of tortious-ness or criminality only. Rather, it focuses on whether "the purpose for the interception—*its intended use*—was criminal or tortious." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (quoting *Sussman v. Am. Broad. Cos*, *Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) (emphasis added). Here, Defendants had only one "intended use" for patient data: to transmit it to third parties in knowing violation of federal pronouncements from the FTC and OCR, HIPAA, Michigan law, common law, and industry standards. ¶¶ 273-75, PageID230.

Plaintiffs painstakingly detail that framework, including the FTC's diligence since 2021 (four years before this lawsuit was filed) in pursuing enforcement actions in the healthcare industry over the same tracking activities involved here. ¶¶ 21-27, PageID.156-159. The OCR's initial guidance prohibiting data tracking was issued on December 1, 2022, and OCR has since clarified its application to pixel technologies. *Id*.[3] McLaren is a HIPAA-regulated entity and cannot bury its head in the sand by portraying itself as a regular business with a profit-motive.

The FAC also lays out industry standards for the protection of patient information, a "core value in health care" and cardinal duty for medical providers. ¶ 35, PageID.161. Indeed, the American Medical Association Code of Medical Ethics provides that "[d]isclosing information for commercial purposes without consent undermines trust, *violates principles of informed consent and confidentiality*, and may harm the integrity of the patient-physician relationship." ¶ 36, PageID.161. McLaren's intentional disregard of applicable regulations and these standards is sufficient to show that its "intended use" of patient data was unlawful.

It is immaterial that this "intended use" was to further McLaren's money-making objectives. As Defendants note, healthcare providers' use of tracking

---

[3] *See also* Steve Alder, *OCR Updates Guidance on the Use of Online Tracking Technologies by HIPAA Regulated Entities*, HIPAA Journal (Mar. 19, 2024), https://www.hipaajournal.com/ocr-updated-online-tracking-technology-guidance/.

technologies has triggered litigation in courts across the country. *See* MTD, PageID.257. Despite knowing that there is an unbalanced split of authority on relevant pleading standards for the crime-tort exception, Defendants cherry-pick from the few cases that comport with their desired result. The more widespread and better-reasoned approach supports Plaintiffs.

Courts have applied varying standards to analyze the crime-tort exception. Some purport to apply it narrowly, requiring that "primary motivation" or "determinative factor" was tortious or criminal. *Lugo v. Inova Health Care Servs.,* No. 1:24-cv-700 (PTG/WEF), 2025 U.S. Dist. LEXIS 55590, at *17 (E.D. Va. Mar. 25, 2025). Many others "have taken a more liberal approach, finding that if the interceptor's plan for, or intended use of, the recording was criminal or tortious, the crime-tort exception applies." *Id.* While the latter approach better aligns with the statute's language,[4] courts find allegations like those asserted here as sufficient under either standard.

As *Lugo* recently noted, "[c]ourts around the country . . . have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy laws." *Id.* at *18 (citing eleven recent cases

[4] *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted *for the purpose of committing any criminal or tortious act* in violation of the Constitution or laws of the United States or of any State." (emphasis added)).

from various federal courts). That court found persuasive the decisions that "have upheld ECPA claims using the crime-tort exception where the alleged criminal purpose for the interception was a violation of HIPAA or a state health privacy law, *despite the healthcare provider having an additional commercial, marketing, or advertising purpose behind the interception*." *Id.* at *21 (emphasis added). Rejecting Defendants' argument, *Lugo* noted that "'the mere existence of a lawful purpose alone does not 'sanitize an interception that was also made for an illegitimate purpose.'" *Id.* at 23-24 (quoting *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369, 378 (S.D.N.Y. 2024) (cleaned up). This approach properly frames the disclosure—which is unlawful—as the "intended use," and therefore the "purpose," of the interception. *See id*.

Prudence and page limitations foreclose a comprehensive recital of similarly decided cases, as illustrated by the non-exhaustive list below. While these cases variously apply the "primary motivation or determinative factor" test or a less stringent standard, the same result has been repeatedly obtained.

- *B.K. v. Desert Care Network,* No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024)
- *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)
- *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023)
- *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024)
- *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023)

- *Smith v. Loyola Univ. Med. Ctr*., No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024)
- *Cooper v. Mount Sinai Health Sys*., Inc., 742 F. Supp. 3d 369 (S.D.N.Y. 2024)
- *A.D. v. Aspen Dental Mgmt., Inc*., No. 24 C 1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sep. 9, 2024)
- *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 U.S. Dist. LEXIS 169202 (W.D. Wash. Aug. 29, 2025)
- *Castillo v. Costco Wholesale Corp*., No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024)
- *Doe v. Wellstar Health Sys., Inc*., No. 1:24-CV-01748-JPB, 2025 U.S. Dist. LEXIS 209327 (N.D. Ga. Aug. 21, 2025)
- *R.S. v. Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)
- *K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 U.S. Dist. LEXIS 206864 (D. Or. Nov. 14, 2024)
- *Vriezen v. Infinite Health Collaborative, P.A*., No. 24-CV-3743 (NEB/DJF), 2025 U.S. Dist. LEXIS 211708 (D. Minn. Sep. 30, 2025)
- *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024)
- *Pattison v. Teladoc Health, Inc.*, No. 23-cv-11305 (NSR), 2025 U.S. Dist. LEXIS 121044 (S.D.N.Y. June 25, 2025)

Many of these courts specifically reject the premise that a commercial purpose rescues a defendant who makes disclosures in violation of HIPPA and/or state law. *See, e.g., Cooper*, 742 F. Supp. 3d at 382-83 ("Mount Sinai's broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong"); *Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720.[5]

---

[5] In some instances, it is because they eschew the "primary motivation or determinative factor" test. *See e.g., Castillo*, 2024 U.S. Dist. LEXIS 207197 at *19. But, courts have also found the more stringent test satisfied finding that "intended use" is an unlawful act even where driven by a commercial motive. *See, e.g., Cooper*, 742 F. Supp. 3d at 378; *Gay*, 2024 U.S. Dist. LEXIS 168515 at *10 (citing *Cooper*).

It is only by conflating the discrete acts of interception and disclosure that a different result can be reached. *See, e.g., Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081-NMG, 2025 U.S. Dist. LEXIS 195964, at *37 (D. Mass. Aug. 29, 2025)[6] ("[T]he interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation."). But the foregoing authority and FAC establish that this is inconsonant with how the disclosures occur. As Plaintiffs allege, one of the at-issue technologies causes "communications between patients and Defendants [to be] received by Defendants and stored on their server(s) before CAPI collects and sends the Private Information contained in those communications directly from Defendants to Meta." ¶ 100, PageID.180. Defendants' other tracking technologies cause patients' communications to be "intercepted" and separately "duplicated" for disclosure to third parties. *See, e.g., id.* ¶ 131, PageID.191. These are precisely the sort of "pixel" technologies that courts have repeatedly found cause separate disclosures. *See, e.g., ChoicePoint* LLC, 2025 U.S. Dist. LEXIS 169202 at *2-3 ("Plaintiffs allege that the Google and Facebook pixels on the Website transmitted the fact that Plaintiffs scheduled appointments with ChoicePoint to Google and to Facebook"); *id*. at *23 ("Plaintiffs sufficiently

---

[6] While this Report and Recommendation was largely adopted, the plaintiff subsequently sought and received leave to re-plead her ECPA claim. *Doe v. Lawrence Gen. Hosp.* Case No. 1:25-cv-10081-NMG (D. Mass) ECF No. 48 at 5; *id.* at ECF No. 55. Plaintiff subsequently filed an amended complaint asserting the claim. *Id.* ECF No. 56.

allege that ChoicePoint's intent to disclose their information in violation of HIPAA is a separate act from the interception of their data."); *Aspen Dental Mgmt. Inc.*, 2024 U.S. Dist. LEXIS 161090 at *9.

To imbue the minority strain of divergent authority with some regional credibility, Defendants rely on Judge Jonker's opinion in *Martinez v. Mentavi*, No. 25-cv-228 (W.D. Mich. Oct. 9, 2025).[7] MTD, PageID.267. While the court aligned with the minority view as to the applicable pleading standard for the crime-tort exception, it recognized the divergence of authority and a present lack of guidance from the Sixth Circuit. *See id.* at 8. Against that backdrop, *Martinez* applied a version of the crime-tort exception that would immunize defendants from liability so long as they could claim any purpose which was not explicitly unlawful, no matter how many crimes or torts may have occurred in furtherance of that purpose. *See id.*

Instead of an interception's unlawful "intended use," *Martinez* would demand an unlawful "intended use" undergirded by an exclusively unlawful *motivation*. But the ECPA simply prohibits intercepting a communication for the purpose of doing an unlawful thing. Nothing in the statute contemplates considering *why the interceptor chose to do the unlawful thing*. Excusing an indisputably unlawful act because it was committed to make money is an absurd result.

---

[7] Notably, Defendants ignore that the court summarily denied the defendant's motion to dismiss as to each of the plaintiff's state law claims. *Id.* at ECF No. 19.

Another problem with the *Martinez* court's construction, and others like it, is that it requires courts to weigh competing motivational factors at the pleading stage to conclusively determine their relative primacy. The term "determinative factor" itself contemplates the existence of *other* factors. *See, e.g., Descamp-Wuerth v. Bendix Aerospace Sector of Allied-Signal, Inc.*, File No. 1:89-CV-170, 1990 U.S. Dist. LEXIS 7842, at *11 (W.D. Mich. June 25, 1990) ("age was a determining factor, although not necessarily the sole factor"). Many courts have found this precise weighing exercise to be inappropriate on the pleadings.[8] As an alternative basis for denial, whether McLaren had criminal or tortious intent when intercepting Plaintiffs' communications should not be decided prior to discovery. Since at a minimum Plaintiffs "may be able to show" the crime-tort exception applies, the Court should decline Defendants' invitation to make strained factual determinations at this stage.

**B. The Tortious and Criminal Disclosure of Plaintiffs' Private Information Was Independent of Its Interception.**

Defendants' related argument that the *interception* was not "independent of the intentional act of recording" attacks a strawman, again ignoring the interception-

[8] *See, e.g., Lugo,* 2025 U.S. Dist. LEXIS 55590, at *24 ("Discovery is needed to reveal whether INOVA had a criminal or tortious intent"); *Gay*, 2024 U.S. Dist. LEXIS 168515 at *4; *Doe v. Meta Platforms, Inc.,* No. 22-CV-03580-WHO, 690 F. Supp. 3d 1064, 178 (N.D. Cal. 2023); *In re Group Health Plan Litig.*, 709 F. Supp. 3d at 720.

disclosure distinction. *See* MTD, PageID.268. This is not, as Defendants characterize it, "a simultaneous tort arising from the act of recording itself." *Id.* Nobody disputes that Defendants may "listen to" or "record" their communications with Plaintiffs. What they were *not allowed* to do was disclose those communications to third parties. Defendants refuse to acknowledge the distinction.

In contrast to Defendants' largely inapposite authority,[9] courts repeatedly recognize that the "independent" requirement is satisfied by tracking technologies' discrete *interception* and *disclosure* as alleged here. *ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202 at *22-23 (collecting cases).[10] "Plaintiffs are not pleading that the mere act of interception is the criminal or tortious act; rather, Plaintiffs are pleading that the criminal or tortious act is the independent, secondary act of

---

[9] Defendants rely on cases that did not involve the use of pixels by healthcare providers to disclose private health information in violation of, *inter alia*, HIPPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) (involving general cookie tracking); *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) (involving oral communication recording); *Sussman v. Am. Broad Cos.*, 186 F.3d 1200 (9th Cir. 1999) (eavesdropping claim against TV network).

[10] *See also Prime Healthcare Servs. Inc.*, 2025 U.S. Dist. LEXIS 6338 at *6 ("[the] intentional *disclosure* of the collected Private Information…constitutes a 'further impropriety' independent and separate from Prime Healthcare's *interception*.'") (emphasis in original); *Hartley*, 2024 U.S. Dist. LEXIS 78517 at *5-6 ("Plaintiff's Complaint is based on… her objection to the *disclosures* of the IIHI, not in its *acquisition*[.]") (emphasis in original); *Aspen Dental Mgmt. Inc.*, 2024 U.S. Dist. LEXIS 161090 at *8 ("Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim.").

disseminating through the Pixel and Conversions API Plaintiffs' PHI and PII to third parties such as Facebook and Google." *Pattison,* 2025 U.S. Dist. LEXIS 121044 at *9.

Defendant's reliance on *B.K. v. Eisenhower Med. Ctr.* ("*Eisenhower I*"), 721 F. Supp. 3d 1056 (C.D. Cal. 2024) is telling. There, the court dismissed the ECPA claim *without prejudice* and later permitted the plaintiff to replead the count. *See id.* at 1065; *B.K. v. Eisenhower Med. Ctr*. ("*Eisenhower III*"), No. EDCV 23-2092 JGB (DTBx), 2025 LX 403253, at *2 (C.D. Cal. Oct. 20, 2025).[11] The threshold issue in *Eisenhower* was a straightforward pleading deficiency that is plainly not present here. *Eisenhower I,* 721 F. Supp. 3d at 1065 ("While Plaintiffs allege that Defendant engaged in the allegedly illegal interception of their and the proposed class members' information 'for Defendant's commercial advantage,' Plaintiffs do not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable."). In contrast, the FAC here expressly alleges the unlawfulness of the resulting disclosures, extensively outlining the legal framework that prohibits them. *See* ¶¶ 20-32, PageID.156-60.

## II. PLAINTIFFS HAVE PLEADED AN ACTUAL PRESENT INJURY.

Damages must be alleged on the basis of "an actual, present injury." *Abdelmaguid v. Dimensions Ins. Grp., LLC*, No. 361674, 2024 Mich. App. LEXIS

[11] Seven months later the defendant agreed to a class-wide settlement, ensuring no further analysis of the ECPA allegations. *Id.*

1044, at *15 (Ct. App. Feb. 8, 2024) (quoting *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014). Plaintiffs plead "actual present injuries" through allegations of (1) unlawful access and use of their Private Information by unauthorized third parties, (2) diminution of value of their Private Information, (3) loss of the benefit of the bargain, and (4) an increase in harassment, spam, and targeted advertisements. Defendants' conclusory assertions that these harms are "speculative" and "hypothetical" without explanation or citation are unavailing.

This matter is unlike *Doe v. Henry Ford Health System*[12] or *Rakyta v. Munson Healthcare*,[13] on which Defendants primarily rely. In *Doe*, the court determined *at summary judgment* that there was no present injury to support damages of credit monitoring costs where the plaintiff "conceded that she has no evidence that her information was viewed by anyone on the Internet or used for an improper purpose such as identity theft" or "present injury to her credit or identity." 308 Mich. App. at 600-01. And in *Rakyta*, the plaintiff "framed her allegations as each involving the risk of future harm from identity theft and similar future harms and alleged that she and the other potential class members had suffered damages . . . to reduce the risk of future harm." 2021 Mich. App. LEXIS 5905, at *19.

[12] 308 Mich. App. 592 (2014)
[13] No. 354831, 2021 Mich. App. LEXIS 5905 (Ct. App. Oct. 14, 2021)

The decision in *Kingen v. Warner Norcross + Judd LLP* provides useful guidance on identifying actual, present injuries that distinguish cases from *Doe* and *Rakyta*. In *Kingen*, plaintiffs alleged that their PII was stolen from the defendant's network. 2023 U.S. Dist. LEXIS 222175 (W.D. Mich. Sep. 28, 2023). The defendant moved to dismiss, relying on the same cases as Defendants—*Doe v. Henry Ford Health System* and *Rakyta v. Munson Healthcare*. The court ruled the complaint "sufficiently distinct" from *Doe* and *Rakyta*, concluding that allegations of plaintiffs' loss of control over their PII and financial information, along with its promise, publication, and theft, were sufficient to establish an actual, present injury. The court noted that unlike in *Doe*, where plaintiffs alleged only a future risk of harm, and in *Rakyta*, where plaintiffs alleged only an immediate risk of harm, the plaintiffs asserted that these injuries had already occurred. *Kingen.*, 2023 U.S. Dist. LEXIS 222175 at *13-14.

Similar to *Kingen*, and in contrast to *Doe* and *Rakyta*, Plaintiffs allege that unauthorized third parties not only accessed their Private Information but used it in ways that harmed Plaintiffs. First, Plaintiffs allege that unauthorized parties used it for financial gain without consent or compensation to Plaintiffs, which diminished Plaintiffs' ability to control, monetize, or benefit from their own data, which they assert has "a recognized monetary value" and can be sold or leveraged in the digital economy. ¶¶ 219-28, PageID.214-215. Plaintiffs further allege that the unlawful

disclosure and use resulted of their Private Information resulted in ongoing harm, including "harassment, spam, and targeted advertisements specific to Plaintiffs' medical conditions and other confidential information." ¶¶ 175-76, 189, 259, 309, PageID.202, 205, 226, 239. Finally, Plaintiffs allege the unauthorized disclosure resulted in a loss of the benefit of the bargain, as they would have paid less for medical services, had they known of Defendants' disclosure practices. ¶ 194, PageID.206.

Contrary to Defendants' assertions, Plaintiffs have pled actual harms which have already materialized. Nothing about them is speculative. The well-recognized damages that flow from these present injuries are recoverable in this action, and Defendants' motion should be denied.

## III. DEFENDANTS' WEBSITES ARE AN EXTENSION OF THEIR MEDICAL PRACTICE AND SUBJECT TO THEIR FIDUCIARY DUTIES.[14]

Defendants argue that Plaintiffs' claim for Breach of Fiduciary Duty (Count I) fails because Defendants, as medical care facilities, "do not owe a fiduciary duty

[14] Defendants assert in a footnote, without meaningful development, that the Court should dismiss Plaintiff Wehrle's and Griffin's claims against Defendant Karmanos for lack of an alleged connection with Karmanos or its Website. MTD, PageID.262, n.1. This argument is not properly raised and is unaccompanied by any substantive argument. *See Sizzling Black Rock Steak House Franchising, Inc. v. Harold L. Kestenbaum, PC*, No. 21-cv-11621, 2024 LEXIS 126363, at *24 (E.D. Mich. July 17, 2024) ("Courts routinely decline to consider . . . perfunctory, undeveloped arguments"). Moreover, Plaintiffs allege that Defendants are one entity for purposes of this lawsuit. ¶ 130, PageID.190-91. At most, this is an improper issue for the pleading stage.

to Plaintiffs in relation to the operation of their Websites." MTD, PageID.262. However, as Defendants' Websites are an extension of their medical care and services, the fiduciary duty arising from the medical provider-patient relationship extends to their Website operations.[15]

The relationship between a medical provider and patient is fiduciary and imposes fiduciary duties. *Bero Motors v. Gen. Motors Corp.*, 2001 Mich. App. LEXIS 2029, at *4 (Mich. Ct. App. Oct. 2, 2001). A fiduciary must act for the benefit of the principal regarding matters within the scope of the relationship. *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016). In the medical context, that scope includes all matters that constitute "medical care," which includes not only diagnosis and treatment, but necessarily includes the confidential handling of patient information. *See Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 723-24 (E.D. Mich. 2005); *Melynchenko v. Clay*, 152 Mich. App. 193, 197 (1986).

Defendants are providing Plaintiffs with medical care even on their Websites. The Websites are integral extensions of Defendants' medical services, helping

[15] To the extent Defendants' argument is that no fiduciary relationship exists between Defendants and Plaintiffs, that issue is a question of fact inappropriate for resolution at the pleading stage. *Spreitzer v. Hutchison*, 2018 Mich. App. LEXIS 686, at *10 (Mich. App. Mar. 20, 2018) ("While the question whether a fiduciary duty exists is a question of law for the court to decide, the existence of a confidential relationship or fiduciary relationship is a question of fact.").

patients identify physicians, explore treatment options, and initiate care. ¶¶ 38-40, PageID.162. Plaintiffs all allege that they are a patient of one or both Defendants and used the Websites to access, manage, and receive medical services. ¶¶ 164, 166, 168, PageID.199-200. As they did, Defendants collected Private Information to facilitate medical care, including health concerns, treatment preferences, physician selection, and diagnoses, ¶ 140, PageID.193, making the Websites inseparable from the provision of care and squarely within the fiduciary scope.

Defendants' reliance on *Burton* is misplaced. *Burton* addressed billing practices—which the court deemed "a creditor-debtor relationship"—outside the fiduciary scope. 373 F. Supp. 2d at 724. Here, Plaintiffs' claims concern the core of the provider-patient relationship: the protection of privileged medical information. Defendants' intentional disclosure of this Private Information to third parties without consent undermines trust and compromises care quality. *See Melynchenko*, 152 Mich. App. at 197 (finding no violation of the fiduciary duty where physician would testify only about non-privileged matters, which "should have no deleterious effect on his treatment of a patient and should have no chilling effect on a patient's disclosures during the course of their relationship.").

Because Plaintiffs' allegations arise directly from the fiduciary obligations inherent in the medical provider–patient relationship, Plaintiffs have sufficiently

alleged that Defendants owed, and breached, a fiduciary duty in connection with the operation and use of their Websites.

## IV. PLAINTIFFS' ALLEGATIONS ESTABLISH AN OBJECTIONABLE INTRUSION.

Defendants next argue that Plaintiffs fail to state a claim for intrusion upon seclusion, asserting that Plaintiffs fail to allege that Defendants obtained their Private Information through an objectionable method. But as common sense dictates and numerous courts have found, the surreptitious interception and disclosure of Private Information is plainly objectionable.

To establish a claim of intrusion upon seclusion, a plaintiff must allege: (1) the existence of a secret and private subject matter; (2) a right to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable person. *Garback v. Lossing*, No. 09-cv-12407, 2010 U.S. Dist. LEXIS 99059, at *20 (E.D. Mich. Sep. 20, 2010). Defendants concede that Plaintiffs have pled the existence of a private matter and a right to keep that matter private. Rather, they argue that Plaintiffs' allegations do not establish any objectively objectionable conduct. Not so.

Plaintiffs allege that Defendants deliberately integrated Meta Pixel and CAPI, Google Analytics, and LinkedIn Insight Tag into their Website and servers, and that these technologies intercepted and shared communications with third parties, including Meta, Google, LinkedIn, and more. ¶¶ 131-151, Page ID.191-96. Further,

Plaintiffs' allegations describe the interference as intentional and involving sensitive health information, including communications about medical records and diagnoses. ¶¶ 127, 129, 132, 142, 144, 156, 254, 264, 268, 282-83, 285, PageID.189-191, 194, 197, 224, 227-28, 229, 233-34. These allegations are sufficient to establish that Defendants' methods were objectionable. *Grp. Health Plan Litig.*, 709 F. Supp. 3d at 714 (allegations that defendant shared "sensitive health information, including communications about medical records and diagnoses," pleaded "highly offensive" actions).

Defendants attempt to obfuscate the issue by focusing on Plaintiffs' voluntary use of their websites. This ignores the relevant question: whether information was obtained about a private matter through an objectionable method. *Garback*, 2010 U.S. Dist. LEXIS 99059, at *20. Plaintiffs have alleged that Defendants installed code on their websites that intercepted and shared Plaintiffs' Private Information with third parties, and courts across the country have ruled that this alleges objectionable conduct and therefore adequately pleads a claim of intrusion upon seclusion. *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) ("Plaintiffs adequately and plausibly plead that Sharp intentionally intruded upon their seclusion by embedding Meta Pixel on their website and sharing their data with Meta without their knowledge or consent"); *Grp. Health Plan Litig.*, 709 F. Supp. 3d at 714 (allegation that defendant "deliberately integrated" tracking

software into its website and servers sufficiently pleaded intrusion upon seclusion); *see also Lewis v. LeGrow*, 258 Mich. App. 175, 193 (2003) (private, surreptitious data capture (secret video recording) constitutes actionable invasion of privacy).[16]

## V. PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT.

Finally, Defendants argue that Plaintiffs have failed to state a claim for unjust enrichment, asserting that Plaintiffs have not pleaded a benefit conferred or an unjust retention. MTD, PageID.277.

To state a claim for unjust enrichment, the plaintiff must "establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 36 (2006). First, Plaintiffs alleged that Defendant received substantial value from their data, including significant financial benefits through the sharing of their Private Information. *See* ¶¶ 102, 213-16, PageID.181, 211-12 (alleging that Defendants receive bolstered profits and enhanced advertising services and more cost-efficient marketing for sharing Plaintiffs' data with third parties). Second, Plaintiffs have pleaded an unjust

[16] In fact, numerous courts have declined to resolve intrusion-upon-seclusion claims on the basis that the method was not objectionable, recognizing that objectionability is a question of fact for a jury. *See, e.g.*, *Dalley v. Dykema Gossett, P.L.L.C.*, 287 Mich. App. 296, 313 (2010); *Kaul v. Raina*, No. 244045, 2004 Mich. App. LEXIS 663, at *6 (Ct. App. Mar. 4, 2004); *Saldana v. Kelsey-Hayes Co.*, 178 Mich. App. 230, 234 (1989).

retention of the benefits that Defendants received. The FAC alleges that Defendants procured Plaintiffs' Private Information and received analytics and advertising benefits while failing to obtain consent or properly disclose that they engaged in these practices, ensuring they controlled all ability to profit from the disclosure of that data to third parties. ¶¶ 1, 4, 102, 132, 213-16, PageID.151-152, 181, 191, 211-12.

Under these circumstances, particularly when there is an increased expectation of privacy in sensitive health data shared with a medical provider, it is inequitable for Defendants to retain the benefits they gained through these improper acts. *See Halaburda v. Bauer Publ'g Co., LP*, No. 12-CV-12831, 2013 U.S. Dist. LEXIS 109954, at *25 (E.D. Mich. Aug. 5, 2013) (declining to dismiss unjust enrichment claim where plaintiffs pleaded "that defendants engaged in collection and illegal disclosure of their personal reading information, and that the monetary and other benefits associated with such disclosure represents unjust enrichment").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint.

Dated: November 12, 2025

**COULSON P.C.**

/s/ *Nicholas A. Coulson*

Nicholas A. Coulson, Esq. (P78001)
Ellyn Gendler (P88255)
300 River Place Drive, Suite 1700
Detroit, MI 48207
T: (313) 644-2685
E: nick@coulsonpc.com
E: egendler@coulsonpc.com

Katrina Carroll, Esq.*
Kyle Shamberg, Esq.*
CARROLL SHAMBERG LLC
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Tel. 872-215-6205
katrina@csclassactions.com
kyle@csclassactions.com

David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

Don Bivens*
don@donbivens.com
DON BIVENS, PLLC
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661

**pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2025, I served a copy of the foregoing with the Clerk of Court using the Court's ECF system, which will send notification of such filing to all counsel of record.

By_ s/ _Nicholas A. Coulson