**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JOYCE WEHRLE, YVETTE GRIFFIN, and ALICE KLEINSCHMIDT, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>McLAREN HEALTH CARE CORPORATION, and BARBARA ANN KARMANOS CANCER INSTITUTE,<br><br>Defendants. | Case No. 25-cv-11420<br><br>Hon. Matthew F. Leitman |

**DEFENDANTS' REPLY IN SUPPORT**
**OF THEIR RULE 12(b)(6) MOTION TO DISMISS**


Christopher G. Dean
McDONALD HOPKINS LLC
600 Superior Ave., Ste. 2100
Cleveland, OH 44114
(216) 348-5400
*cdean@mcdonaldhopkins.com*

Timothy J. Lowe
McDONALD HOPKINS PLC
39533 Woodward Avenue, Ste. 318
Bloomfield Hills, Michigan 48304
(248) 220-1359
*tlowe@mcdonaldhopkins.com*

Jennifer W. Torrez
McDONALD HOPKINS LLC
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
*jtorrez@mcdonaldhopkins.com*

*Counsel for Defendants*

Plaintiffs' Opposition to Defendants' Motion to Dismiss[1] is heavy on rhetoric but light on analysis and the law. Even where Plaintiffs cite cases, they misinterpret that authority and the underlying legal principles. For the reasons set forth herein and in Defendants' Motion, Plaintiffs' Complaint should be dismissed.

## I. ARGUMENT

### A. Count II for Violation of the ECPA Fails to Allege Defendants Acted for the Purpose of Committing an Independent Crime or Tort.

No dispute exists that the ECPA's party exception applies. Indeed, Plaintiffs expressly admit as much. (Opp. pp. 5, 15 ("Nobody disputes that Defendants may 'listen to' or 'record' their communications with Plaintiffs.").) Plaintiffs contend that the crime-tort exception to the exception applies, but their argument is built on a fundamental misunderstanding of the ECPA's plain language and legislative intent.

*First*, Plaintiffs acknowledge that they must allege facts sufficient to show that Defendants intercepted communications for the *purpose* of committing a crime or tort, but urge the Court to adopt a sweeping interpretation of "purpose" that would stretch the language of the statute far beyond its original intent. (*See* Opp. p. 9.) Plaintiffs rely entirely on out-of-district case law, arguing that the Sixth Circuit is bereft of applicable precedent. Plaintiffs are wrong: the Sixth Circuit *has* spoken.

---

[1] ECF No. 17, referred to as "Opposition" or "Opp." Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 16) is referred to as the "Motion" or "Mtn."

Although not a pixel case, in *Boddie v. American Broadcasting Companies, Inc*. the Sixth Circuit analyzed the language of the ECPA and recognized that the fundamental aim of the statute is to punish interception for "evil purposes" (*i.e.* with intent to harm). *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) ("We think it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability . . . .").[2] *Boddie* thus underscores the commonsense point that statutory language *matters*, particularly given the severe penalties involved here. *Id*. The court in *Martinez v. Mentavi* recognized the importance of strict adherence to the language of the statute just last month when it dismissed an ECPA claim in identical circumstances, finding the "primary motivation" or "determinative factor" tests faithful to the text because "purpose" (singular) is "the reason for which something was done." No. 25-cv-228 (W.D. Mich. Oct. 9, 2025). *Martinez* adheres to both the language of the statute and the spirit of *Boddie*.

Of all the cases cited by Plaintiffs, none endeavored to perform an in-depth statutory interpretation of "purpose." But the District of Massachusetts has—in *Doe v. Lawrence General Hospital*—which Plaintiffs tellingly ignore. There, the court undertook a comprehensive evaluation of "purpose," holding that "[f]rom the wording of the ECPA, it is evident that the language 'intercepted *for the purpose* of

[2] This is evident from the "draconian" penalties imposed by the statute of $10,000 per violation. *DIRECTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 943 (S.D. Ind. 2003).

committing any criminal or tortious act' means that the goal or aim of the interception itself must have been to use the intercepted information to commit a crime or tort. It is not enough that a crime or tort was a mere side-effect of the interception." *Id.* (quotations in original). Broadening the statutory language to encompass incidental and unintended consequences would collapse the one-party consent rule because "virtually every one-party consent interception could be said to violate the privacy interest of the non-consenting party." *Id.* at *18; *see also Martinez*, No. 25-cv-228 at p. 8. Here, Plaintiffs allege that Defendants' "primary motivation" was "advertising " (Compl. at ¶ 213.) Under a faithful application of the ECPA's text, Plaintiffs' allegations fail to plead a criminal or tortious purpose.

*Second***,** Plaintiffs' own Complaint belies the argument that they pled an "independent" crime or tort. Plaintiffs allege that the interception and disclosure occurred "[c]ontemporaneously." (Compl. ¶¶ 70, 103, 135, 170, 268.) Here too, *Lawrence General Hospital* is instructive, holding that the "independent" crime or tort requirement was not met in similar circumstances. *Lawrence Gen. Hosp.*, 2025 WL 2808055 at *14 (collecting cases and dismissing ECPA claim in part because "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation"). Plaintiffs failed to plead an independent criminal or tortious purpose, which is also fatal to their claim.

**B. Counts I and VI Fail Because Plaintiffs Do Not Plead Cognizable Damages to Support Breach-of-Fiduciary-Duty and Negligence Claims.**

Plaintiffs' claims for negligence and breach of fiduciary duty fail for lack of cognizable damages.[3] They allege only speculative, hypothetical, and conclusory harms, which Michigan courts routinely find wanting. (*See* Mtn. pp. 7, 23-24.) Plaintiffs argue that allegations of unlawful access and use of their personal data by third parties; diminution in value; loss of the benefit of the bargain; and an increase in harassment, spam, and targeted advertisements are enough. (Opp. p. 17.) Not so.

As an initial matter, Plaintiffs do not actually allege in the Complaint that they have experienced harassment, spam, or targeted advertisements. Rather, they allege that they are at *risk* of those supposed harms. (*See* Compl. ¶¶ 189, 309.) Per *Rakyta* and *Henry*, hypothetical future injuries do not suffice. (*See* Mtn. pp. 7, 23-24.) *Rakyta* also forecloses claims based on "unlawful access" without present injury. *Id*.

Plaintiffs' argument (at p. 17) that diminution in value of data constitutes actual, present injury fares no better. *Rakyta*, at *3 ("Plaintiff's allegation that her confidential information lost value as a result of the exposure to third parties also does not save her negligence claims.") As in *Rakyta*, "[t]he allegation is conclusory—[Plaintiffs] merely asserted that the exposure of the information caused a loss of value without explaining how it did so." *Id*. The same is true for Plaintiffs'

[3] The claim for breach of fiduciary duty fails for the additional reason that Plaintiffs have not pled a duty owed, as discussed in further detail below.

allegation that they lost an unidentified benefit of some undefined bargain. They pled no facts to support those purported harms, and their "[c]onclusory allegations [do] not suffice to state a cause of action." *Id*. Counts I and VI fail for these reasons.

**C. Count I For Breach of Fiduciary Duty Also Fails for Lack of Duty.**

Plaintiffs argue that the Websites are an "extension of [Defendants'] medical care and services" and deduce that Defendants[4] owe a duty arising from the physician-patient relationship with respect to the Websites. (Opp. p. 20.) Tellingly, Plaintiffs cite no authority to support this theory, and that is because they are wrong.

The cases cited by Plaintiffs show that a fiduciary duty exists within the physician-patient relationship—and nothing more. (*See* Opp. pp. 20-21.) Although Plaintiffs summarily dismiss *Burton*, that case is instructive. There, the court explained that "Michigan courts have limited a fiduciary duty to *medical care*." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 723-24 (E.D. Mich. 2005) (emphasis added). The plaintiffs in *Burton* argued that the defendant hospital breached its fiduciary duty by overbilling for medical care. *Id*. at 710. In holding that no fiduciary duty existed, the court noted that the physician-patient relationship "is founded on the proper *diagnosis and treatment of medical problems*." *Id*. at 724

[4] As set forth in the Motion, Karmanos could not owe any duty to Wehrle or Griffin, who do not claim to have had a relationship with Karmanos at all. Although Plaintiffs argue that "Defendants are one entity for purposes of this lawsuit," (Opp. p. 19), they allege the opposite—that McLaren and Karmanos are separate entities, (Comp. ¶¶ 11, 13). Any claim by Wehrle or Griffin against Karmanos should be dismissed.

(citing *Melynchenko v. Clay*, 152 Mich. App. 193, 197 (1986)) (emphasis added). The court further explained that the plaintiffs did not challenge the quality of care they received or the treating physicians' diagnoses. *Id*. So too here; Defendants' provision of medical care is not at issue. And any claim that Defendants diagnosed or treated medical issues via the Websites is not only absent from the Complaint,[5] it also defies common sense. As in *Burton*, Plaintiffs here "attempt to stretch the logic of the fiduciary relationship that exists between a doctor and a patient" to encompass services provided that are, at best, ancillary to the provision of medical care. *See id*.

**D. Count III for Invasion of Privacy Alleges No Objectionable Intrusion.**

Plaintiffs assert (at pp. 22-23) that the "objectionable method" requirement is satisfied because Defendants installed advertising technologies on the Websites which purportedly "intercepted and shared communications" with third parties. But the Complaint shows that Plaintiffs *voluntarily* interacted with the Websites and that the purported *disclosure* of information is the issue. (Mot. p. 15.) Plaintiffs admit as much: according to them, "[n]obody disputes that Defendants may 'listen to' or 'record' their communications with Plaintiffs." (Opp. p. 15.) In Plaintiffs' own words, this case is not about an objectionable intrusion; it is about an allegedly improper disclosure. That does not support a claim for intrusion upon seclusion.

---

[5] Plaintiffs cite paragraphs 38-40, 140, 164, and 166 to argue that they satisfied their pleading burden. But those paragraphs allege only the conclusions that the Websites are extensions of Defendants' medical practices and that Plaintiffs were patients.

**E. Count V for Unjust Enrichment Plead No Benefit Unjustly Retained.**

In a half-hearted attempt to rehabilitate their unjust enrichment claim, Plaintiffs urge this Court to take their word that their personal data has monetary value. (Opp. pp. 24-25.) They cite no authority to back this allegation, because they cannot. (*See* Mtn. pp. 20-22.) Plaintiffs' single citation, *Halaburda v. Bauer Publishing Co.*, is inapposite. (Opp. p. 25.) In *Halaburda*, the court allowed an unjust-enrichment claim to proceed where the plaintiffs pled that the defendants directly sold the plaintiffs' personal information to a third party. *Halaburda v. Bauer Pub. Co., LP*, No. 12-cv-12831, 2013 WL 4012827, *8 (E.D. Mich. Aug. 6, 2013). Plaintiffs make no such allegation here, and any supposed benefit Defendant received is hypothetical at best. The only benefit Plaintiffs plausibly allege they conferred on Defendants was payment for services. (Compl. ¶ 94.) Plaintiffs do not argue that those payments were unjustly retained, and thus they fail to state a claim.

## II. CONCLUSION

For the foregoing reasons and for those set forth in the Motion, Defendants respectfully request that the Court grant their Motion and award Defendants such other and further relief as is appropriate.

Respectfully Submitted,

Dated: November 26, 2025 By: */s/ Christopher G. Dean*