UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE WEHRLE,

Plaintiffs,

Case No. 25-cv-11420
Hon. Matthew F. Leitman

v.

McLAREN HEALTH CARE CORPORATION, *et al.*,

Defendants.
______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 16)**

In this putative class action, Plaintiffs Joyce Wehrle, Yvette Griffen, and Alice Kleinschmidt bring claims against Defendants McLaren Health Care Corporation ("McLaren") and Barbara Ann Karmanos Cancer Institute ("Karmanos"). In their First Amended Complaint, Plaintiffs allege that McLaren and Karmanos embedded in their websites tracking software and tools that obtained and disclosed Plaintiffs' personally identifiable information ("PII") and protected health information ("PHI") to third parties without their consent. (*See, e.g.*, First Am. Compl. at ¶¶ 2-4, ECF No. 13, PageID.151-152.)

Defendants have now filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot., ECF No. 16.) For the reasons explained below, the motion is **GRANTED IN PART AND DENIED IN PART**.

# I

## A

This is one of many cases that have been filed in courts across the country in which plaintiffs allege that website operators track how visitors use their websites and then share that information with third party advertising companies like Google, Meta, and LinkedIn without the visitors' consent. In this action, Plaintiffs are Michigan residents who are patients of McLaren and/or Karmanos, two health-care providers. (*See* First Am. Compl. at ¶¶ 8-10, ECF No. 13, PageID.153.) McLaren is a Michigan corporation that operates several hospitals, surgery centers, imaging centers, and other health-care related businesses. (*See id.* at ¶ 12, PageID.153-154.) "Karmanos is the largest provider of cancer care and research in Michigan and is wholly owned by McLaren." (*Id.* at ¶ 13, PageID.154.)

Plaintiffs allege that both McLaren and Karmanos operate websites that are accessible to the general public. According to Plaintiffs, McLaren and Karmanos have embedded in their websites "tracking software" and tracking technologies, "such as the Meta Pixel, Google Analytics, Google Tag Manager, and LinkedIn Insight Tag." (*Id.* at ¶¶ 1-2, PageID.151.) These technologies can, among other capabilities, "collect[] various types of user data including IP addresses, browser information, device data, page views, and detailed user interactions." (*Id.* at ¶ 117, PageID.186-187.) That information can then be used to "creat[e] detailed behavioral

profiles [of website visitors] based on location and browsing habits." (*Id*. at ¶ 126, PageID.189.) For example, cookies associated with the LinkedIn Insight Tag "allow LinkedIn to connect the health-related information collected from the Karmanos Website directly to [a website visitor's] LinkedIn profile. Since LinkedIn accounts typically contain a user's real name, professional information, and other personal details, this creates a direct link between sensitive health information and an identified individual. This means that information about a user's cancer treatment searches, oncologist selections, or interest in specific medical procedures can potentially be associated with their professional identity on LinkedIn." (*Id.* at ¶ 127, PageID.189-190.)

Plaintiffs say that they used Defendants' websites to book medical appointments and search for information about their medical conditions and doctors. For instance, Plaintiff Wehrle alleges that "[d]uring the relevant time period, when the Tracking Tools were present," she used McLaren's website to, among other things, "book her regular mammogram appointments." (*Id.* at ¶164, PageID.200.) Likewise, Plaintiff Kleinschmidt used McLaren's and Karmanos' websites to "to book healthcare and cancer care appointments." (*Id.* at ¶168, PageID.200.)

Plaintiffs then claim that Defendants used the tracking software embedded in their websites to "track and collect [these] communications with" McLaren and Karmanos. (*Id.* at ¶ 2, PageID.151.) Plaintiffs further assert that when the tracking

software collected those communications – which included Plaintiffs' IP addresses, PII, and PHI – the trackers sent that sensitive information to Google, Meta, and LinkedIn "invisibly[] and without the [Plaintiffs'] knowledge [or consent]." (*Id.* at ¶¶ 4, 135, PageID.151-152, 192.) More specifically, Plaintiffs say that:

> On information and belief, Defendants' Tracking Tools necessarily sent non-public Private Information to third parties like Meta, Google, and LinkedIn, including but not limited to Plaintiffs' and Class Members': (1) health conditions; (2) desired medical treatment or therapies; (3) desired locations or facilities where treatment was sought; (4) phrases and search queries (such as searches for symptoms, treatment options, or types of providers); (5) searched and selected physicians and their specialties conducted via the Website search bars; and (6) appointment scheduling activities.

(*Id.* at ¶ 140, PageID.193.) Plaintiffs insist that the disclosure of these communications, data, and IP addresses – which Plaintiffs say are "considered personally identifiable data" under the Health Insurance Portability and Accountability Act ("HIPPA") – violates HIPAA and other privacy laws. (*Id.* at ¶ 28, 125, PageID.159, 188-189.)

Finally, Plaintiffs allege that Defendants benefit from the use of the tracking tools in several ways. First, the information gathered from the tracking tools "allow[ed] Defendants [to] optimize the delivery of ads, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs." (*Id.* at ¶ 138, PageID.193.) Second, "[D]efendants [were] compensated by

the third parties in the form of enhanced advertising services and more cost-efficient marketing on their platforms." (*Id.* at ¶ 213, PageID.211.) Finally, Plaintiffs say that Defendants received "substantial monetary compensation." (*Id.* at ¶ 299, PageID.236.)

**B**

Plaintiffs filed this putative class action on May 14, 2025. (*See* Compl., ECF No. 1.) Their operative pleading is the First Amended Complaint. (*See* First Am. Compl., ECF No. 13.) In that pleading, Plaintiffs claim that Defendants' alleged misuse of Plaintiffs' PII and PHI "amounts to criminal and tortious acts in violation of federal and state laws" and violated their privacy. (*Id.* at ¶ 213, PageID.211.) Plaintiffs bring the following claims against the Defendants:

- Breach of Fiduciary Duty (Count I);
- Violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) *et seq*. (the "ECPA") (Count II);
- Intrusion Upon Seclusion (Count III);
- Breach of Implied Contract (Count IV);
- Unjust Enrichment (Count V); and
- Negligence (Count VI).

Defendants moved to dismiss Plaintiffs' Complaint in its entirety on October 22, 2025. (*See* Mot., ECF No. 16.) Plaintiffs agreed to dismiss their breach of

implied contract claim, but they otherwise oppose Defendants' motion. (Resp. at n.2, ECF No. 17, PageID.306.) The Court held a hearing on the motion on August 19, 2026.

## II

Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*. When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Mere "conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III

### A

The Court begins with Plaintiffs' claim for breach of fiduciary duty in Count I of their Complaint. In this Count, Plaintiffs allege that "[m]edical providers" like Defendants "have a duty to their patients to keep non-public medical information completely confidential, and to safeguard personal and medical information." (First Am. Compl. at ¶ 249, ECF No. 13, PageID.223.) And Plaintiffs say that "[c]ontrary to their duties as medical providers, and their express and implied promises of confidentiality, Defendants installed Tracking Tools [on their websites] to disclose and transmit to third parties Plaintiffs' … communications with Defendants" including Plaintiffs' PII and PHI. (*Id.* at ¶ 252, PageID.223.) This claim fails because Plaintiffs have not plausibly alleged a cognizable injury.

Under Michigan law, "an individual is entitled to relief under a tort theory only when he has suffered a present injury." *Henry v. Dow Chemical Co.*, 701 N.W.2d 684, 689 (Mich. 2005). Here, Plaintiffs say that Defendants' breach of fiduciary duty injured them in the following ways:

> Plaintiffs suffered injuries in the form of (i) invasion of privacy; (ii) diminution of value of the Private Information; (iii) statutory damages; (iv) the continued and ongoing risk to their Private Information; and (v) the continued and ongoing risk of harassment, spam, and targeted advertisements specific to Plaintiffs' medical conditions and other confidential information they communicated to Defendants via the Websites.

(First Am. Compl. at ¶ 189, ECF No. 13, PageID.205. *See id.* at ¶¶ 217-230, PageID.212-217.) But these alleged injuries are insufficient to support Plaintiffs' breach of fiduciary duty claim because they are either not cognizable under Michigan law or not supported by sufficient factual allegations.

The Court begins with Plaintiffs' claim that they "have been deprived of the economic value of their personal data." (*Id.* ¶ 219, PageID.213.) Plaintiffs say that "[i]n today's digital economy, personal data—especially health-related information—has significant commercial value," and Plaintiffs insist that Defendants' sharing of that data with Google, Meta, and LinkedIn deprived Plaintiffs of the ability to cash in on that data themselves. (*Id.*) But Plaintiffs have not plausibly alleged that the limited disclosure of their PII and PHI to Defendants has devalued that data or impacted their ability to sell the data to other interested parties. Indeed, while Plaintiffs say that there is a market for their PII and PHI, they have not pleaded any facts to suggest that Defendants' limited involvement with their PII and PHI had any real impact on that market. For instance, Plaintiffs have not alleged any facts showing that some other purchaser would have paid more for their data but for Defendants' alleged disclosure of the data to Google, Meta, and LinkedIn. Simply put, Plaintiffs' allegation that Defendants devalued their PII and PHI is conclusory and insufficient to constitute an injury under Michigan law. *See, e.g.*, *Rakyta v. Munson Healthcare*, 2021 WL 4808339, at *3 (Mich. Ct. App. Oct.

14, 2021) (explaining that plaintiff's allegation "that her confidential information lost value as a result of the exposure to third parties" was "conclusory" and could not support a claim where "she merely asserted that the exposure of the information caused a loss of value without explaining how it did so").

Plaintiffs next say that the breach caused them injuries because they are now at "risk that their sensitive health-related information may be further processed, combined with other data sources, or potentially disclosed to additional third parties, causing continued and future harm." (First Am. Compl. at ¶ 229, ECF No. 13, PageID.215.) But that risk is not a cognizable injury. As the Michigan Supreme Court has explained, "[i]f plaintiffs' claim is for injuries they may suffer in the future, their claim is precluded as a matter of law, because Michigan law requires more than a merely speculative injury." *Henry*, 701 N.W.2d at 687. Thus, "only damages that arise from an actual, present injury, are cognizable." *Rakyta*, 2021 WL 4808339, at *3. Plaintiffs' allegations that they are "at risk" for "future" harms therefore cannot support their breach of fiduciary duty claim.

Plaintiffs further assert that they have suffered injuries in the form of "harassment" and "spam" from "targeted advertisements." (Resp., ECF No. 17, PageID.321. *See also* First Am. Compl. at ¶ 189, ECF No. 13, PageID.205.) But Plaintiffs have not pleaded sufficient facts to show how they have been injured by the targeted advertisements. Being subjected to advertising on platforms like

Google, Meta, and LinkedIn is a fact of life; every user of those services receives advertising. Plaintiffs have not explained – much less pleaded facts to show – how their receipt of *targeted* advertising was any more harassing and/or injurious than the random advertising that they would have received absent Defendants' sharing of their data. And they have not alleged that Defendants' sharing of their data caused them to receive *more* advertising than other users of those platforms. Simply put, Plaintiffs have not pleaded enough facts from which the Court could conclude that the use of targeted advertisements here caused Plaintiffs any cognizable harm.

Finally, Plaintiffs say that they suffered injuries from the breach of fiduciary duty in the form of an invasion of privacy. But under Michigan law, "damages will not be presumed … for an alleged invasion of privacy." *Doe*, 865 N.W.2d at 922. Thus, a plaintiff must "demonstrate *both* that someone viewed the [confidential] information *and* that the viewing resulted in some form of injury to the plaintiffs or actual cognizable damages." *Rakyta*, 2021 WL 4808339, at *6 (internal citation and punctuation omitted; emphasis added.) As explained above, Plaintiffs have not plausibly alleged any cognizable injury from any purported viewing of their PII and/or PHI here. Thus, Plaintiffs have failed to allege a cognizable invasion-of-privacy interest.

For all of these reasons, Plaintiffs have failed to plausibly allege that any alleged breach of fiduciary duty caused them to suffer a cognizable injury. The Court therefore **DISMISSES** Plaintiffs' breach of fiduciary duty claim.[1]

**B**

The Court next turns to Plaintiffs' claim in Count II of the First Amended Complaint that Defendants violated the ECPA. The Court declines to dismiss that claim at this time.

**1**

The ECPA is part of the Federal Wiretap Act, and it creates a "private cause of action against 'any person who ... intentionally intercepts, [or] endeavors to intercept, ... any wire, oral, or electronic communication.'" *McClain v. Capital Vision Services, LLC*, 2026 WL 710926, at *3 (N.D. Ill. Mar. 13, 2026) (quoting 18 U.S.C. §§ 2511(1)(a), (5)(a)(ii)). A private cause of action may also be brought against "any person who intentionally discloses or uses, or endeavors to disclose or use, the contents of an intercepted communication." *Id.* (citing 18 U.S.C. §§ 2511(1)(c), (d)).

"The ECPA has an exception [to liability]: the so-called one-party consent rule. Under that rule, it is not unlawful for a party to intercept *its*

[1] Defendants further argue that Plaintiffs cannot maintain a breach of fiduciary duty claim because no fiduciary duty arose in connection with Plaintiffs' use of their websites. The Court need not, and does not, reach that argument.

*own* communications." *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025) (emphasis in original). Thus, "when the person intercepting a communication 'is a party to the communication or where one of the parties to the communication has given prior consent to such interception,'" there can be no liability for that interception under the ECPA. *McClain*, 2026 WL 710926, at *3 (quoting 18 U.S.C. § 2511(2)(d)). The parties agree that that the one-party consent exception to liability under the ECPA applies here because Plaintiffs voluntarily used Defendants' websites and therefore the Defendants were a party to the communications at issue.

However, "the analysis does not stop there." *Id.* That is because "[t]here is an exception to the 'party exception' (*i.e.*, an exception to the exception) where the aggrieved individual has had her communications intentionally intercepted by a party to those communications for the purpose of committing a crime or tort." *Id.* Under what is commonly known as the "crime-tort" exception, "a party that intercepts or causes interception [cannot] escape liability if the 'communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State.'" *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *2 (N.D. Ill. Dec. 11, 2023) (quoting 18 U.S.C. § 2511(2)(d)). As one district court has explained:

> This "crime-tort exception" is "construed narrowly." *In re DoubleClick Inc. Privacy Litig. ("DoubleClick")*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). The crime or tort must have been the "primary motivation" or "a determinative factor" for the defendant's conduct. *DoubleClick*, 154 F. Supp. 2d at 514–15; *United States v. Tarantino*, 617 Fed. App'x. 62, 65 (2d Cir. 2015). Thus, the defendant must have a criminal or tortious purpose at the time of the interception that is "independent of the act of recording itself." *Caro*, 618 F.3d at 100 ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act."). That a defendant's conduct was criminal or tortious does not suffice. *Id.* But "the mere existence of [a] lawful purpose alone does not 'sanitize a[n interception] that was also made for an illegitimate purpose.'" *DoubleClick*, 154 F. Supp. 2d at 514 (quoting *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

*Cooper v. Mount Siani Health Systems, Inc.*, 742 F.Supp.3d 369, 378 (S.D.N.Y. 2024).

Putting all of these pieces together, "the ECPA makes it unlawful to intentionally intercept communications. But a party to the conversation is free to intercept its own communications, unless it does so for the purpose of committing an act that is a crime or a tort." *McLain*, 2026 WL 710926, at *3 (quoting *Stein*, 2025 WL 580556, at *4.

**2**

The parties vigorously dispute whether the crime-tort exception applies here. Plaintiffs insist that the exception is satisfied because the "intended use" of Plaintiffs' PII and PHI was "to transmit [the data] to third parties in knowing violation of federal pronouncements from the [Federal Trade Commission] and [the Office for Civil Rights in the U.S. Department of Health and Human Services], HIPAA, Michigan law, common law, and industry standards." (Resp., ECF No. 17, PageID.311.) Defendants respond that Plaintiffs have not, and cannot, "assert that Defendants acted with a criminal or tortious purpose as required to state a claim for violation of the ECPA." (Mot., ECF No. 16, PageID.268.) Instead, Defendants say, "Plaintiffs admit that advertising was 'the primary motivation' for the use of these technologies." (*Id.*, PageID.269, quoting First Am. Compl. at ¶ 213, ECF No. 13, PageID.211.) And Defendants insist that "employ[ing] tracking technology 'for marketing purposes to bolster their revenues'" does not satisfy the requirement under the crime-tort exception that a party act with a criminal or tortious purpose. (*Id.*, quoting First Am. Compl. at ¶ 133, ECF No. 13, PageID.191.)

Courts reviewing ECPA claims nearly identical to the one Plaintiffs bring here have reached opposite conclusions when determining whether the claims satisfy the crime-tort exception. *Compare McLain*, 2026 WL 710926, at *3 (concluding that plaintiffs had satisfied the crime-tort exception and denying motion to dismiss ECPA

claim) and *Cooper*, 742 F.Supp.3d 369 at 378-383 (same) *with Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1057-58 (N.D. Cal. 2025) (holding that plaintiffs had "not shown that the crime-tort exception applies" and granting motion to dismiss ECPA claim). However, "the majority of courts faced with this issue" – *i.e.*, whether to apply the crime-tort exception in circumstances like these – "have adopted [p]laintiffs' reading of the statute" and allowed ECPA claims to proceed. *Doe v. Veradigm, LLC*, 2026 WL 1948471, at *4 (N.D. Ill. July 6, 2026) (denying motion to dismiss ECPA claim and concluding that plaintiffs had plausibly alleged that the crime-tort exception had been satisfied). As these courts have explained, "HIPAA makes it a crime for a 'covered entity'—which includes health care providers—to knowingly disclose individually identifiable heath information without authorization 'with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm.'" *Cooper*, 742 F.Supp.3d at 379 (quoting 42 U.S.C. § 1320d-6; 45 C.F.R. § 160.103). And "[a] defendant's criminal or tortious purpose of 'knowingly ... disclos[ing] individually identifiable health information to another person,' 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception." *Id.* (citing cases). The Court finds the reasoning of this majority view persuasive at this stage. *See also*, *e.g.*, *Doe v. Wellstar Health System, Inc.*, 799 F.Supp.3d 1268, 1279 (N.D. Ga. 2025) ("Here, Plaintiffs allege that Defendant captured and transmitted their PII and PHI to third

parties without their consent and in violation of Defendant's own privacy policies and HIPAA. At the motion to dismiss stage, and construing all reasonable inferences in the light most favorable to Plaintiffs, the Court finds that Plaintiffs sufficiently allege that Defendant intercepted the communications for a criminal or tortious purpose"). Here, Plaintiffs have plausibly alleged that Defendants knowingly and intentionally transmitted their HIPAA protected data to third parties without their consent, thus satisfying the crime-tort exception under the ECPA.[2] (*See*, *e.g.*, First Am. Compl. at ¶¶ 125, 181, 213, ECF No. 13, PageID.188-189, 203, 221.)

Finally, Defendants argue that Plaintiffs' ECPA *mens rea* allegations fall short because Plaintiffs fail to "'plead sufficient facts to support an inference that the [Defendants] intercepted the communication[s] for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording.'" (Mot., ECF No.

---

[2] "[T]o the extent that factual issues remain as to [Defendants'] intent behind allowing Google and Meta tools on its [websites], … these issues are more appropriately resolved at the summary judgment stage." *Doe*, 799 F.Supp.3d at 1279. *See also Cooper*, 742 F.Supp.3d at 381-82 ("Mount Sinai will be at liberty to attempt to establish in discovery facts supporting, *inter alia*, that, to the extent it took the above actions, it did so without intending to facilitate Facebook's receipt of confidential patient information or to financially benefit. Mount Sinai may be able to establish, at summary judgment or trial, that it acted without the requisite knowledge and intent. But, taking the [plaintiffs'] allegations as true, as the [c]ourt must at the motion to dismiss stage, they plausibly support the inference that Mount Sinai, for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain").

16, PageID.268, quoting *In re Google Cookie Placement Consumer Priv. Litig*, 806 F.3d 125, 145 (3rd Cir. 2015) (emphasis in original).) The Court disagrees. Plaintiffs have "plausibly alleged that 'at the time of intercepting Plaintiffs' PHI and PII, Defendant[s] intended to secondarily disseminate Plaintiffs' PHI and PII to third parties – in other words, intending, at the moment of interception, to commit a separate act, a criminal act in violation of HIPAA.'" *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at ** 2-3 (S.D.N.Y. June 25, 2025) (declining to dismiss ECPA claim). *See also A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (denying motion to dismiss ECPA claim and explaining that "[e]ven if the crime-tort exception did require an act distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim"). The Court therefore declines to dismiss Plaintiffs' ECPA claim on this basis. (*See*, *e.g.*, First Am. Compl. at ¶¶ 20-32, 45, 100, 131, 213, 267-269, ECF No. 13, PageID.156-160, 164, 180, 191, 211, 229.)

For all of these reasons, the Court **DENIES** Defendants' motion to the extent that it seeks dismissal of Plaintiffs' ECPA claim.[3]

---

[3] The Court's conclusion that Plaintiffs have plausibly alleged an ECPA claim reflects the Court's current thinking based on the state of the law as it stands today. But as the Court noted above, courts across the country continue to reach different

**C**

Next, in Count III of Plaintiffs' First Amended Complaint, Plaintiffs bring a claim for intrusion upon seclusion under Michigan law. In that Count, Plaintiffs allege that Defendants "intentionally intruded upon [Plaintiffs'] … seclusion by implementing the Trackers on their Websites, enabling the interception of their private communications and their disclosure to Google and LinkedIn without their knowledge or consent." (First Am. Comp. at ¶ 283, ECF No. 13, PageID.233.) For the reasons explained below, the Court **DISMISSES** that claim.

To state a claim for intrusion upon seclusion under Michigan law, a plaintiff must plead "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Mills*, 536 N.W.2d 824, 832 (Mich. App. 1995). Critically, "[a]n action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication; it is considered analogous to a trespass." *Id.*

---

conclusions on the application of the crime-tort exception under these circumstances, and new opinions addressing that issue are being released on a seemingly daily basis. Several Courts of Appeals may also weigh in during the coming months. The Court will revisit this issue on summary judgment with an open mind, and the Court welcomes the parties to present the Court with updated authorities on this question at that time.

Plaintiffs have failed to state a viable intrusion upon seclusion claim because their claim, at its core, revolves around Defendants' *publication* of their PII and PHI, not the manner in which Defendants obtained that information. Indeed, Plaintiffs have no basis on which to attack the manner in which Defendants obtained their information because they voluntarily shared that information with Defendants. And it is only Defendants' sharing of that information that led Plaintiffs to bring this action; there is no reason to believe that Plaintiffs would have sued if Defendants had collected their data without sharing the data with the advertisers. For these reasons, federal courts have repeatedly dismissed intrusion upon seclusion claims just like the ones Plaintiffs bring here. *See*, *e.g.*, *Doe*, 799 F.Supp.3d at 1274 (dismissing intrusion upon seclusion claim under Georgia law and holding that "[w]here, as here, [p]laintiffs voluntarily provided their information to Defendant, there is no intrusion upon seclusion"); *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (collecting cases, noting that "[c]ases like this have sprouted like weeds in recent years," and explaining that, "[i]n the Court's view, it seems that the weight of authority in similar pixel tracking cases is now solidly in favor of [defendant's] argument [that] [t]here is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider"); *Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 943-44 (N.D. Ill. 2023) (same).

These dismissals are fully consistent with the manner in which Michigan courts have construed and applied the intrusion upon seclusion tort under Michigan law. For instance, the Michigan Court of Appeals rejected an intrusion upon seclusion claim in *Doe* for similar reasons. The plaintiffs in *Doe* were patients of an abortion clinic who planned to obtain abortion services at the clinic. The plaintiffs alleged that the defendants "displayed the[ir] real names" on large signs that defendants were carrying during a public abortion protest. *Doe*, 536 N.W.2d at 832. "Plaintiffs alleged that they did not give defendants permission to publicize the fact of their abortions." *Id.* The trial court dismissed plaintiffs' intrusion upon seclusion claim and the Michigan Court of Appeals affirmed. The state appellate court explained that where "the alleged wrongful actions that form[ed] the basis of plaintiffs' claim of intrusion relate[d] only to the publication of information, not to any wrongful intrusion," the plaintiffs could not maintain an intrusion upon seclusion claim. *Id. See also Lansing Ass'n of School Adm'rs v. Lansing School Dist. Bd. of Educ.*, 549 N.W.2d 15, 20-21 (Mich. App. 1996) (holding that plaintiff could not pursue invasion upon seclusion claim where it was "the contemplated disclosure, not the method of the disclosure, that plaintiffs [found] intrusive and objectionable").

For all of these reasons, the Court **DISMISSES** Plaintiffs' intrusion upon seclusion claim in Count III of the First Amended Complaint.

**D**

The Court next turns to Plaintiffs' unjust enrichment claim in Count V of the First Amended Complaint. In this Count, Plaintiffs allege that "Defendants [have] benefit[ed] from the use of Plaintiffs' and Class Members' Private Information and unjustly retained those benefits at their expense." (First Am. Compl. at ¶ 297, ECF No. 13, PageID.236.) More specifically, Plaintiffs say that "Defendants received direct benefits from implementing these trackers, including detailed analytics about Website usage that inform their business and marketing decisions" and that Defendants received "economic, intangible, and other benefits, including substantial monetary compensation" for disclosing Plaintiffs' PII and PHI. (*Id.* at ¶ 200, 299, PageID.207, 236.) The Court declines to dismiss Plaintiffs' unjust enrichment claim at this time.

To state a claim for unjust enrichment under Michigan law, a plaintiff must allege "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. App. 2006.)

Plaintiffs have adequately alleged those elements here. Plaintiffs have sufficiently pleaded that Defendants received direct and substantial benefits from the sharing of Plaintiffs' PHI and PII with third-parties, including detailed analytic

information about how individuals use their websites as well as "substantial monetary compensation." Plaintiffs also plausibly alleged that it would be inequitable for Defendants to retain those benefits under these circumstances. Many federal courts have reviewed nearly identical unjust enrichment claims, and the weight of that authority recognizes the viability of these claims at the pleading stage. *See*, *e.g.*, *Doe*, 799 F.Supp.3d at 1276-77 ("Here, Plaintiffs allege that Defendant went beyond the scope of patients' permission by using data tracking tools to transmit their PII and PHI to third parties such as Meta and Google so that Defendant could improve its advertising. Examining the allegations in the Amended Complaint in the light most favorable to Plaintiffs, the Court finds that they adequately plead a claim for unjust enrichment"); *Jarrell v. Adena Health System*, 2025 WL 81305, at * 8 (S.D. Ohio Jan. 13, 2025) ("At this stage, the Court declines to dismiss Plaintiff's unjust enrichment claim. By plausibly alleging that the intercepted PHI had cognizable value to Plaintiff, and that Adena unjustly reaped that value by disclosing it, without authorization, for 'marketing and revenue generation,' the Court concludes that Plaintiff has sufficiently alleged the elements of an unjust enrichment claim to survive a motion to dismiss"); *Brunecz v. Warren General Hospital*, 2026 WL 2043024, at *11 (W.D. Penn. July 15, 2026) (declining to dismiss unjust enrichment claim where "Plaintiffs have essentially alleged that they conferred their PHI upon WGH, who promised not to disclose it, but then proceeded to disclose

Plaintiffs' PHI to third parties, without Plaintiffs' authorization, and received a monetary benefit from such disclosure, which it retained at Plaintiffs' expense"). For all of these reasons, the Court will not dismiss Plaintiffs' unjust enrichment claim at this time.[4]

**E**

Finally, the Court **DISMISSES** Plaintiffs' negligence claim in Count VI of the First Amended Complaint. In that claim, Plaintiffs allege that "Defendants owed Plaintiffs and Class Members a duty to keep their Private Information completely confidential, and to safeguard sensitive personal and medical information." (First Am. Compl. at ¶¶ 304, 306, ECF No. 13, PageID.237.) Plaintiffs say that "[c]ontrary to its duties as a medical provider and its express promises of confidentiality, Defendants installed the Tracking Tools to disclose and transmit to third parties Plaintiffs' and Class Members' communications with Defendants, including Private Information and the contents of such information." (*Id.*)

---

[4] As with Plaintiffs' ECPA claim, the Court acknowledges that courts have reached varied conclusions about the viability of unjust enrichment claims under facts like those pleaded here. *See*, *e.g.*, *B.K. v. Eisenhower Medical Ctr.*, 721 F.Supp.3d 1056, 1069-1070 (C.D. Cal. 2024) (dismissing unjust enrichment claim arising out of disclosure of PII and PHI to third parties). As the case law on this issue continues to develop, the Court invites the parties to bring to the Court's attention at summary judgment any new decisions that have been reached by courts reviewing unjust enrichment claims under circumstances similar to those here.

Under Michigan law, "in order to state a negligence claim on which relief may be granted, plaintiffs must [plead and] prove (1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry*, 701 N.W.2d at 688. Plaintiffs' allegations have not satisfied the injury element of a negligence claim under Michigan law.

First, as the Court noted above when discussing Plaintiffs' breach of fiduciary duty claim (*see* Section (III)(A) *supra*), "an individual is entitled to relief under a tort theory [under Michigan law] only when he has suffered a present injury." *Henry*, 701 N.W.2d at 689. And here, as the Court explained, Plaintiffs have not plausibly alleged any present injuries. Their injury allegations are simply too theoretical and/or speculative.

Second, in the context of a negligence claim, a plaintiff must show more than just a present injury to satisfy the injury element. More specifically, a plaintiff must plead and prove that the plaintiff suffered a present *physical* injury. As the Sixth Circuit has held, "[i]n Michigan, 'present *physical* injury' is necessary to state a claim for negligence." *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 653 (6th Cir 2016) (quoting *Henry*, 701 N.W.2d at 691) (emphasis added). In other words, "a plaintiff must demonstrate a present *physical* injury to person or property in addition to economic losses that result from that injury in order to recover

under a negligence theory." *Henry*, 701 N.W.2d at 690 (emphasis added). *See also id.* ("It has simply always been the case in [Michigan] jurisprudence that plaintiffs alleging negligence claims have also shown that their claims arise from present physical injuries"); *In re: National Prescription Opiate Litigation*, 458 F.Supp.3d 665, 693 (N.D. Ohio. 2020) ("A Michigan plaintiff seeking damages for negligence must establish present physical injury to person or property"). Here, Plaintiffs have not alleged that they suffered any physical injuries as a result of Defendants' alleged negligence. Their negligence claim therefore must be **DISMISSED**.

**IV**

For the reasons explained above, Defendants' motion to dismiss (ECF No. 16) is **GRANTED IN PART AND DENIED IN PART** as follows:

- The motion is **GRANTED** with respect to the claims in Count I for breach of fiduciary duty, Count III for invasion of privacy based on an intrusion upon seclusion, Count IV for breach of implied contract, and Count VI for negligence. Those claims are all **DISMISSED**.

- The motion is **DENIED** with respect to the claims in Count II for violation of the ECPA and Count V for unjust enrichment. Those claims may proceed to discovery.[5]

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 15, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 15, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

[5] Defendants also argue in their motion to dismiss that to extent any of Plaintiffs' claims survive, Plaintiffs Wehrle and Griffin should not be able to proceed against Defendant Karmanos because those Plaintiffs do not "allege[] any relationship at all with Karmanos or connection to the Karmanos Website." (Mot., ECF No. 16, PageID.262.) The Court declines to dismiss Wehrle's or Griffin's claims against Karmanos at this time. Defendants may explore during discovery to what extent, if any, Plaintiffs Wehrle and Griffin used Karmanos' website, and Defendants may raise this argument again on summary judgment on a full factual record.